The original opinion in this case, announced April 16, 1976, is withdrawn, this opinion substituted therefor, and the application for rehearing is overruled.
This appeal is from a judgment for plaintiff in an action of detinue for a 24' x 65' mobile home, and a judgment against defendants on their counterclaim.
Defendants purchased the mobile home from Treasure Island Mobile Homes *Page 558 
(dealer). This dealer was floor planned through plaintiff, Third National Bank of Nashville, Tennessee. Defendants executed a retail installment contract to plaintiff to effect a purchase money interest in the mobile home. That security interest was perfected by filing a UCC-1. The contract was entered into on September 5, 1973, and was payable in monthly installments of $163.58. Defendants ceased paying the installments on December 20, 1973. The mobile home was vacated in March, 1974. Plaintiff's brief says it was "abandoned"; defendants' brief says they "moved out." The unpaid balance was $23,064.78.
On February 14, 1974, counsel for the Gigandets wrote the manufacturer, Tidwell Industries, at Haleyville, that "Mr. and Mrs. Gigandet have decided to demand a refund of all monies paid out by them from your Company and to return the home unit to you." A copy of this letter was sent to the plaintiff bank and to Treasure Island Mobile Homes.
This suit in detinue was filed on July 26, 1974, the answer and counterclaim was filed August 29, 1974, and the trial was held on May 12, 1975.
The evidence supported the judgment in favor of the plaintiff for possession of the mobile home. Our concern is with the counterclaim for a return of the consideration paid by the Gigandets.
Gigandet testified that he looked the trailer over "good" before he bought it and that the defects were present when he looked it over, but that he "was assured that they would be taken care of." He said other defects were not noticeable until after he moved into the trailer. He said the pictures his attorney took "shows the bottom of the trailer being unlevel and not bolted together properly." He further testified that after he moved out and revoked his acceptance of it, the trailer was still sitting there but his daughter was "watching the trailer" but some people did enter the trailer without his permission and "broke into the doors."
Mrs. Gigandet testified that the down payment of $1,840.00 was their equity in a Trojan Trailer or mobile home which was traded in on the trailer here involved and that they made three payments of $163.58; that the dealer and the manufacturer came out but when they "tried to relevel the trailer they pulled it apart more than what it was pulled apart at the beginning." She also testified that the trailer was placed on bricks which were the foundation for the trailer when placed between the ground and the bottom of the trailer. The bricks or cement blocks were furnished with the trailer and it was set up by the dealer, Treasure Island.
Joe Poore, a witness called by plaintiff in rebuttal, testified that his occupation was mobile home repair, and that plaintiff sent him to give an estimate on what it would take to fix Gigandet's home. Gigandet told him what was wrong but "He said he didn't want it fixed by us. He said he wanted it fixed by the manufacturer."
The trial court, after hearing the evidence, found "the issues in favor of the plaintiff and against the defendants," which, of course, include the counterclaim.
In appellants' original brief, the only mention of any monetary claim by defendants on their counterclaim was on the last two pages of the brief where it was stated that appellants were entitled to "the amount of $2,330.74, plus expenses, interest, and costs." Nowhere in that brief was there a breakdown of the components of this amount. In brief, on rehearing, appellants state that three payments of $163.58 totals $490.74, plus $1,840.00 (the trade-in allowance) for a grand total of $2,330.74.
Appellants contend that they are entitled to recover what they paid on the contract under Tit. 7A, § 2-711, which provides in pertinent part:
 "(1) Where * * * the buyer rightfully rejects or justifiably revokes acceptance *Page 559 
then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract (section 2-612), the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid"
The buyer (Gigandet) did not reject, so we come to whether they justifiably revoked acceptance to such an extent as to amount to a cancellation by the buyer. In Anderson, Uniform Commercial Code, 2d Ed., Sales, § 2-711:26, p. 423, we read:
 "The buyer is barred from cancelling the contract when he makes such a use of the goods as is inconsistent with a cancellation. Thus, a buyer cannot take the inconsistent positions of (1) claiming that he has revoked acceptance of an automobile and holds a security interest therein, and (2) making actual use and exercise of rights of ownership over the automobile. * * *"
Here, the bank was notified that the Gigandets had "decided to demand a refund of all monies paid out by them. * * *" Assuming that this was requisite notice, the Gigandets made actual use and exercised rights of ownership of the trailer at least three months after they had quit paying and after they had given the meager notice. They claimed that they were looking after it after they had vacated it. They forced the bank to file a suit in detinue for the trailer and in their answer filed on August 29, 1974, denied that they were wrongfully detaining the trailer, but were exercising their rights under Tit. 7A, § 2-608, which provides for revocation of acceptance. But they argue in brief that the contract was cancelled under § 2-711. These claims are inconsistent. As stated in Anderson, UCC, Sales, § 2-608:26, p. 250, "Where the buyer makes continued use of an automobile, such conduct contradicts the buyer's claim that acceptance has been revoked." (Citing Bassman v. Manhattan Dodge Sales (NY), 5 UCCRS 128.)
There is a real question as to proper notice. Under the UCC, the question of what is a reasonable time for giving notice is a question for the jury, or the trier of fact. Anderson, UCC, 2d Ed., Sales, § 2-607:44, p. 228. Here, the cause was tried before the court without a jury and the trier of fact could have, from the evidence, found that notice was not timely.
Again, in reference to § 2-608, we find the following inAnderson, UCC, Sales, § 2-608:11, p. 243:
 "Because of the requirement of substantial impairment, there can be no revocation of an acceptance merely upon proving that there were defects, without showing that they `substantially impair the value' of the contract."
Here, there is no evidence of any amount of impairment of value or damage due to the defects. It is conceded that the trailer was purchased with knowledge of some of the defects.
A seller has a reasonable time to attempt to correct defects in the goods, Anderson, UCC, Sales, § 2-608:28. Here, after the bank came into the picture, it sent Poore to attempt to cure the defects but Gigandet would not permit Poore to do the job or even make an estimate of what it would cost the bank for him to do it. But the Gigandets refused to let him inspect or repair the trailer.
The trial court could have concluded from the evidence that under Tit. 7A, § 2-711, the buyer did not rightfully "reject" or "justifiably revoke acceptance" of the mobile home.
There was ample evidence and law to sustain the finding of the trial court that the appellants were not entitled to recover under their counterclaim.
The usual presumption is applicable that where the trial court sees and hears the witnesses testify, its findings shall determine questions of fact and these findings will not be disturbed on appeal unless plainly wrong or manifestly unjust.Cotton v. May, 293 Ala. 212, *Page 560 301 So.2d 168; Jones v. Wise, 282 Ala. 707, 213 So.2d 914.
The bank argued in brief that the two assignments of error listed by the appellants were not before the court because one was not argued in brief and the other had been held not a valid assignment of error. This would have been effective argument under the old appellate rules. ARAP became effective December 1, 1975. The transcript was not filed in this court until January 5, 1976. Under ARAP 49 (3), the new appellate rules governed. ARAP 20 provides that "Assignments of error are not required." Perhaps out of an abundance of caution, defendants assigned errors, but they also stated the issues in their brief. The issue considered is whether the trial court erred in finding against the defendants on their counterclaim. Our holding is that the trial court did not err.
AFFIRMED.
Application for rehearing overruled.
HEFLIN, C.J., and MADDOX, JONES and SHORES, JJ., concur.