Clovis **STEPHENSON** and Mabel **Stephenson, Appellants-Plaintiffs,**

v.

Bill **FRAZIER** d/b/a Bill Frazier Mobile **Homes** and Vindale Corporation, **Appellees-Defendants.**

No. 2–677A252.

Court of Appeals of Indiana, Fourth District.

Jan. 29, 1980.

Rehearing Denied March 5, 1980.

Raymond A. Brassart, Lennington, Lennington & Brassart, Muncie, for appellants-plaintiffs.

William David Neal, Dunnuck, Rankin, Wyrick & Neal, Muncie, for appellees-defendants.

CHIPMAN, Judge.

In July of 1974 plaintiff-appellants Clovis and Mabel Stephenson purchased a modular home from defendant-appellee Bill Frazier. The total purchase price of $22,500 included the installation of a septic system and construction of a foundation on the Stephensons' rural property. Numerous disputes regarding the home and the foundation arose and the Stephensons eventually sued for rescission of the sales contract. At the close of appellants' case the court granted appellee's motion for involuntary dismissal pursuant to Indiana Trial Rule 41(B). Appellants appeal, arguing the court's ruling was contrary to law as they were entitled to rescind the contract as a result of appellee's

fraud and/or material breach. Appellee argues, *inter alia*, that appellants did not establish a prima facie case for rescission and further appellants prevented full performance by appellee.

■ 'Our scope of review for deciding the issues presented in this appeal is well established. Considering the evidence most favorable to appellants we determine whether there was substantial evidence of probative value which would have sustained the material elements of appellants' complaint. *Stath v. Williams*, (1977) Ind.App., 367 N.E.2d 1120; *Building Systems, Inc. v. Rochester Metal Products, Inc.*, (1976) Ind. App., 340 N.E.2d 791. Applying this standard, we must reverse the decision of the trial court.

## I. APPLICABILITY OF U.C.C.

■ Appellants argue the court erred in not applying the Uniform Commercial Code, Article 2, Sales, in reaching its decision in this case. Appellants are partially correct. Ind.Code 26–1–2–105 defines goods as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale . . . ." Under this definition the sale of the modular home was covered by the Uniform Commercial Code. *Jones v. Abriani*, (1976) Ind.App., 350 N.E.2d 635. The part of the contract relating to the construction of the foundation and installation of the septic system, however, does not fall within the definition of "goods." These contractual provisions were for the performance of services and thus the issues pertaining to them must be determined by common law contract principles.

## II. PREVENTION OF PERFORMANCE

■ Appellee Frazier argues appellants are precluded from rescinding the contract because they prevented his full and complete performance. While the modular home was being installed on their land appellants complained to appellee about various defects in the home and its foundation. The defects with the home itself included loose paneling, a water mark in the bath-

room that had not been repaired as promised, broken storm window frames, a wrinkled roof, missing aluminum siding, crooked window frames, missing axles and wheels and no bathroom mirror. Appellants also argued vigorously that the foundation had been built improperly. On September 9, 1974, appellants and appellee met at the building site to discuss their problems, primarily appellants' complaints concerning the foundation. Frazier stated he approved of the foundation "100%" and if appellants did not like it they could take him to court. At that point, Clovis Stephenson ordered Frazier from his land and told him the property was "off limits" to him and his men. The next day, appellee sent appellants a letter stating he was "ready, willing and able" to install the septic system, attach the footers, replace loose paneling, repair the bathroom ceiling and return the tires and axles. Frazier's letter also said he was ready to fully perform his obligations and complete the work to appellants' satisfaction. The letter made no reference to appellants' complaints about the foundation. Appellants responded with a letter saying it would be impossible for Frazier to complete the work due to the totally unsatisfactory nature of the work already done. The letter concluded by tendering the mobile home back to Frazier and asking for a return of the purchase price.

Under these facts we hold appellants are prohibited from rescinding on the basis of the defects in the modular home, but did not wrongfully prevent Frazier's performance with regard to the foundation.

As noted previously the sale of the modular home was covered by the Uniform Commercial Code. Ind.Code 26–1–2–508 grants a seller the right to cure any nonconformance upon notifying the buyer of his intention to do so. Frazier's letter of September 10 was clearly notice of intent to cure defects in the modular home. Appellants' refusal to allow him to exercise his right to cure therefore prohibits their rescission of the contract based upon defects in the home. *Wilson v. Scampoli*, (1967) D.C.App., 228 A.2d 848; *Reece v. Yeager*

*Ford Sales, Inc.,* (1971) 155 W.Va. 453, 184 S.E.2d 722.

▪ The issue of prevention of performance in this case, however, takes on an entirely different light when viewed in the context of the foundation defects. As under the U.C.C., the common law of contracts excuses the performance of one party where the other party wrongfully prevents that performance. *Brodt v. Duthie,* (1933) 97 Ind.App. 692, 186 N.E. 893; *Roder v. Niles,* (1916) 61 Ind.App. 4, 111 N.E. 340. *See Jacobs v. Jones,* (1967) 161 Colo. 505, 423 P.2d 321; *Ehard v. Pistakee Builders, Inc.,* (1969) 111 Ill.App.2d 227, 250 N.E.2d 1; *Kiff Contractors, Inc. v. Beeman,* (1968) 10 Mich.App. 207, 159 N.W.2d 144.

▪ In our opinion Frazier's letter of September 10 cannot reasonably be considered as an offer to complete and/or correct his promised performance on the foundation. Although the letter contains language which states Frazier wanted to perform all his obligation to appellants'. satisfaction, the letter does not mention the foundation defects. The omission is significant in view of Frazier's statement of the previous day that he completely approved of the foundation and appellants could take him to court. From this evidence we think it obvious Frazier did not intend to cure any of the defects in the foundation; he considered his obligations completely performed. Thus, the evidence most favorable to appellants demonstrates they did not wrongfully prevent Frazier's performance on the foundation.

In light of the above, our inquiry is now directed to determining whether appellants' unilateral rescission of the contract may be justified solely with regard to the foundation. Appellants allege two common law bases for rescission—fraud and material breach.

### III. FRAUD
▪ We do not think appellants' evidence satisfied their burden of showing a prima facie case of fraud as a basis for rescission. A key element of fraud is in-

tent, i. e., the making of false representations with knowledge or reckless ignorance of the falsity. *Blaising v. Mills,* (1978) Ind. App., 374 N.E.2d 1166; *Grissom v. Moran,* (1972) 154 Ind.App. 419, 290 N.E.2d 119, 292 N.E.2d 627. Although Frazier may have breached his promises with regard to the foundation, we do not perceive any evidence of misrepresentations made knowingly or recklessly which induced reliance by appellants. Thus appellants' arguments in this regard do not justify a rescission of the contract.

### IV. MATERIAL BREACH
▪ As appellee Frazier points up, courts are reluctant to grant rescission of a contract where an award of damages will adequately compensate the injured party. If, however, a breach of the contract is a material one which goes to the heart of the contract, rescission may be the proper remedy. *Goff v. Graham,* (1974) 159 Ind.App. 324, 306 N.E.2d 758. We hold the appellants' evidence established a prima facie case of material breach.

When appellant first discussed purchasing the home from appellee much of the conversation was devoted to the foundation. Appellee's salesperson promised the foundation would be built to factory specifications and would cause the home to set above grade level. Because of this he said appellants would have no water problems, something which concerned appellants due to the nature of their land. While the foundation was being constructed appellants complained about the depth of the foundation and poor workmanship. At one point Bill Frazier told appellants the foundation was the worst one he had ever seen and ordered the south one quarter of it dug out and replaced. This effort did not satisfy appellants and they continued to complain. Specifically, they felt the foundation was too low and would cause the home to sit in a hole, a footer, or supporting pillar, had cracked and all but one of the footers had not been placed according to factory specifications. Notwithstanding these complaints Frazier told appellants he approved of the

foundation and they could sue him if they did not like it.

Other evidence shows that when it rained up to twelve inches of water collected under the home due to the foundation having been dug too deeply. A witness for appellants who had experience in building similar foundations testified the foundation was unsafe. He had examined the foundation and found some of the footings to be above the frost line. This would cause the footings to shift as the local ground water froze and thawed. The same phenomenon would occur on the surface because of the standing water. Although there was some testimony that the manufacturer's recommended blocking points [1] did not have to be followed exactly, only one out of twenty-four such points complied with the factory specifications.

■ Under any formula, we think this evidence established at least a prima facie case for material breach of the contract sufficient to justify rescission. The evidence, taken as true, clearly shows the foundation was so inadequately constructed that it presented a serious possibility of damage to the home. Appellants bargained for a properly built foundation which would support the modular home. The evidence viewed in a light most favorable to appellants showed what they received was an architectural lemon which did not meet factory specifications, was out of alignment, retained water, and caused their home to shift every time the ground froze and thawed. We therefore hold the court erred in ruling appellant did not establish at least a prima facie case for rescission of the contract.

■ Appellee Frazier argues appellants are not entitled to rescind because at trial they failed to present enough proof of damages so as to allow the court to return the parties to the status quo. A return to the status quo is of course the object of the rescission of any contract. However, Indiana law is clear that once a party establish-

es the right to rescind a contract and the ability to return the property *in specie* the burden shifts to the other party to prove the monetary specifics necessary to return both parties to the status quo. This is particularly true with regard to the amounts which will offset the money which a defendant must pay to a plaintiff. *Blaising v. Mills,* (1978) Ind.App., 374 N.E.2d 1166; *Grissom v. Moran,* (1973) 154 Ind. App. 419, 292 N.E.2d 627, *denying reh.* (1972) 154 Ind.App. 419, 290 N.E.2d 119. Appellee's arguments in this regard, therefore, are not well taken.

Reversed and remanded.

MILLER, P. J., and YOUNG, J., concur.

---

1. Blocking points are apparently areas under the modular home where supporting pillars or footings are to be located.