*311 OPINION OF THE COURT

Per Curiam.

Order dated November 19, 1979 (Lane, J.) reversed and summary judgment is granted for defendant with $10 costs.
At issue in this case is whether plaintiff Maurice Uchitel may maintain a suit for breach of warranty on the part of seller F. R. Tripler and Company (Tripler), for the latter’s sale to plaintiff of allegedly mistailored and defectively manufactured garments.
In a prior action involving the same parties and the same merchandise, the court in 1976 rendered a judgment of $2,750 in Tripler’s favor. The Judge in that prior action found that Uchitel had ordered specially made garments from Tripler and that Uchitel “never gave Tripler the opportunity to make any adjustments as might be required [but instead] summarily rejected the garments”. The 1976 judgment directed that the garments be delivered to Uchitel. This court affirmed the prior judgment (Tripler & Co. v Uchitel, NYLJ, May 27, 1977, p 5, col 1).
The instant breach of warranty action was commenced by Uchitel in August, 1978. Under a heading “breach of warranty of fitness for use” Uchitel alleged, inter alla, that defendant Tripler had forced him to accept merchandise that had been represented to be of proper size, fit and quality. The complaint continues that upon Uchitel’s inspection the goods turned out to be unfit for use, of poor workmanship and incorrectly tailored. Three thousand one hundred and fifty-five dollars in damages was demanded.
Defendant moved for summary judgment on two grounds. First, Tripler asserted that the four-year limitation period of section 2-725 of the Uniform Commercial Code had run and Uchitel was, therefore, time barred from suing on his breach of warranty claim. Tripler also raised collateral estoppel as a bar, arguing that the 1976 trial had determined adversely to Uchitel that the garments in dispute here were, contrary to the allegations in plaintiff’s complaint, fit and nondefective.
*312 Special Term denied the motion for summary judgment. With regard to the limitations question, the court apparently concluded that since the merchandise had not been delivered to Uchitel until after the 1976-1977 court decisions, the four-year limitation period of section 2-725 of the Uniform Commercial Code did not begin running until that point. The 1978 breach of warranty action was thus timely. Special Term also found that the issues raised in Uchitel’s breach of warranty claim were not identical to those adjudicated in the prior trial and on that basis refused to rule that an estoppel should apply.
In our view there must be a reversal with summary judgment granted in favor of defendant.
TIMELINESS OF THE 1978 BREACH OF WARRANTY ACTION
Where a sale of goods is involved, article 2 of the Uniform Commercial Code supplies the governing limitation period for a breach of warranty claim (see Holdridge v Heyer-Schulte Corp. of Santa Barbara, 440 F Supp 1088; Uniform Commercial Code, §§ 2-102, 2-725). Subdivision (1) of section 2-725 provides that “an action for breach of contract must be commenced within four years after the cause of actionfs accrual].” Subdivision (2) provides that “A breach of warranty [accrues] when tender of delivery is made”.
The point of divergence between the parties on the limitations issue centers on their clashing views of when tender of delivery of the garments took place here. Plaintiff Uchitel contends, and Special Term agreed, that tender was effectuated sometime in 1976-1977 when, pursuant to court order, the garments were delivered to Uchitel. We differ. In our opinion the position staked out by Tripler is the correct one. Tender of delivery occurred in January, 1973 when the goods were held at Tripler’s premises for Uchitel’s acceptance and Uchitel was notified that the items were ready for pickup.
Subdivision (1) of section 2-503 of the Uniform Commercial Code, the core tender provision, states that “Mender of delivery requires that the seller put and hold conforming goods at the buyer’s disposition and give the buyer any notification reasonably necessary to enable *313 him to take delivery.” Subdivision (a) of section 2-308 addresses where delivery is to take place. “Unless otherwise agreed, the place [of] delivery of goods is the seller’s place of business”. (Emphasis added.)
In this case the record makes clear that there was no agreement between the parties for delivery of the clothes at a place other than seller Tripler’s store. Delivery was thus properly to be tendered at the seller’s place of business — here Tripler’s premises (Uniform Commercial Code, § 2-308, subd [a]). The tender requirement, by the plain terms of section 2-503 would then be satisfied, and the breach of warranty action would accrue (Uniform Commercial Code, § 2-725) once Tripler “put and [held the] conforming goods at the buyer’s disposition and [gave] notification reasonably necessary to enable him to take [the goods]” (Uniform Commercial Code, § 2-503, subd [1]). That this was done on January 19, 1973 is beyond dispute. Tripler, after notifying him, proffered the goods to Uchitel on that day. When Uchitel rejected the goods, Tripler repeatedly badgered him in the ensuing months to accept them.
Nor is it of any import that Uchitel refused to take possession of the goods until 1976-1977 under force of a court order. As a leading treatise notes: “The Code definition of tender relaxes the common law cases which held that the seller had to attempt physically to hand the goods over to the buyer” (Nordstrom, Sales, § 96, p 294). All that is needed for proper tender under current law is that the less rigorous requirements of section 2-503 — holding the goods at the buyer’s disposition and giving him reasonable notice — be fulfilled (see Cole v Melvin, 441 F Supp 193, 203-204; First Coinvestors v Coppolla, 88 Misc 2d 495).
More pertinently, tender of delivery is not defeated nor the four-year limitation period of section 2-725 tolled by the buyer’s refusal to accept the goods offered by the seller (see Raymond-Dravo-Langfelder v Microdot, 425 F Supp 614 [a cause of action for breach of warranty accrues when tender of delivery is made. Whether or not *314 buyer accepts goods does not postpone time buyer must file his breach of warranty suit]).
As a final point on the limitations issue, plaintiff Uchitel argues that there was no tender in this case (and thus no running of the Statute of Limitations) since the garments were defectively made and did not conform to the terms of the contract. This contention does carry with it a surface appeal. Section 2-503, after all, speaks of tender as “requiring a] seller [to] put * * * conforming goods at the buyer’s disposition”. (Emphasis added.) However, the unsoundness inherent in the claim that for breach of warranty accrual purposes, no tender is made until a proper tender is made, becomes apparent upon brief reflection. For in every suit founded on a breach of warranty it will be claimed that tender of delivery conforms neither to the express terms of the contract agreed upon by the parties nor to the implied terms incorporated by the Uniform Commercial Code into every contract for the sale of goods (see, e.g., Uniform Commercial Code, §§ 2-314, 2-315 on implied warranties). Indeed, by the very nature of the breach of warranty action, the claim must be made that the seller has failed to live up to the tender requirements of the contract and that the goods involved are defective in some manner. To argue that in a breach of warranty action accrual does not occur until a proper tender is made, would be to substitute in place of section 2-725’s four-year limitation period a statute of nonlimitation and allow the buyer a perpetuity in which to bring suit. We therefore believe that a tender of nonconforming goods starts the four-year breach of warranty period running. Since a tender of delivery took place in the instant case in January, 1973, Uchitel’s breach of warranty suit, filed in 1978, comes more than a year too late.
We turn now to the collateral estoppel defense raised by Tripler.
COLLATERAL ESTOPPEL
Tripler’s claim that Uchitel is collaterally estopped from bringing this breach of warranty suit is predicated on the 1976 litigation. In that case, Tripler & Company *315 sued Uchitel in breach of contract for his refusal to pay for the very same merchandise which is the focus of this lawsuit. As a defense to Tripler’s 1976 claim, Uchitel asserted that “Tripler’s performance in the making of the clothes was so totally inadequate as to excuse Uchitel’s performance.” Tripler prevailed in its contract suit. That first favorable judgment, argues Tripler, determined that the clothes were fit and free of defects. Uchitel, therefore, may not bring this breach of warranty action, reasons Tripler, bottomed as it is on the assertion, rejected in the first litigation, that the merchandise was unsuitable. We agree that Uchitel is collaterally estopped from proceeding with his breach of warranty claim, although not for the reasons presented by Tripler.
Preliminarily, we cannot concur with Tripler’s position that the first action adjudicated that the garments were conforming and nondefective. While it is true that Uchitel raised the issue of defective performance as a defense, the prior decision for Tripler was based on another ground. The Judge in the previous action determined that Tripler & Company should prevail because Uchitel “never gave [it] an opportunity to make any adjustments or alterations to the garment as might be required [Uchitel] summarily rejected the garments.”
The original trial court thus made no mention of whether the clothes conformed to the required specifications, and indeed the opinion’s allusions to Uchitel’s wrongful refusal to allow alterations may indicate belief on the part of the court that some of the merchandise fell a bit short of perfection. The court’s previous finding, however, that Uchitel wrongfully refused to allow alterations of the clothing does bring with it a collateral estoppel effect. In our view, that finding destroys any rights Uchitel may have had to sue in warranty for the defective manufacture of garments involved in this case. This is so for several reasons.
The Uniform Commercial Code sets forth the general rule that “if the goods or tender of delivery fail in any respect to conform to the contract, the buyer may reject the whole” (Uniform Commercial Code, § 2-601, subd [a]) and upon “a rightful rejection” (§ 2-711, subd [3]) sue for *316 breach of contract or breach of warranty (Uniform Commercial Code, §§ 2-313, 2-318). The seemingly harsh “perfect tender” rule is tempered by section 2-508, which provides an exception to the requirement of an immediate perfect tender.
Under section 2-508, a seller, in two instances, is permitted to cure an initial improper tender. First, where the time for performance has not yet expired, the seller may seasonably notify the buyer of his intention to cure and may then cure with a conforming delivery (Uniform Commercial Code, § 2-508, subd [1]). Second, where the time of performance has expired but the seller had reason to believe a nonconforming tender would be accepted, he may seasonably notify the buyer and tender conforming goods (Uniform Commercial Code, § 2-508, subd [2]; Nordstrom, Sales, § 105, pp 317-321). Case law has held that where a buyer unreasonably refuses to permit a seller to exercise his right to cure, no breach of warranty action premised on the defect sought to be cured may be maintained (see Ford Motor Co. v Gunn, 123 Ga App 550, 553-554; General Motors Corp. v Halco Instruments, 124 Ga App 630, 633-634; see, also, Peter Pan Seafoods v Olympic Foundry Co., 17 Wash App 761, 769 [“the seller * * * had the right under (§ 2-508, subd [1]) * * * to cure the complained-of defect * * * the buyer must * * * allow the seller to correct the nonconforming tender. We find that the buyer’s failure to allow repair negated the warranty provisions (upon which the buyer sued)”]).
In the 1976 litigation, the court credited the testimony of Tripler’s lead fitter, Ceasare Scarano, that Uchitel peremptorily refused Tripler a chance to cure any mistailoring by refitting or altering the suit. Implicit in that court’s finding that “Uchitel summarily refused alteration” was the proposition that in the context of retail clothing sales practices, such a refusal was unreasonable. That determination bars Uchitel from bringing an action for defects his recalcitrance prevented from curing (see Rosenberg v Del-Mar Div., Champion Int. Corp., 56 AD2d 576; cf. Hinchey v Sellers, 7 NY2d 287).
*317 Still another Uniform Commercial Code section stands as an impediment to Uchitel’s maintenance of an action for breach of warranty. Subdivision (1) of section 2-605 states:
“The buyer’s failure to state in connection with rejection a particular defect which is ascertainable by reasonable inspection precludes him from relying on the unstated defect *** to establish [a] breach
“(a) where the seller could have cured it if stated seasonably;”.
At the initial 1976 litigation, it was established that as to the bulk of the merchandise, Uchitel simply refused to be fitted without offering any reason or specifying a particular defect as a cause for his balking. With regard to the one suit he tried on without purchasing, Uchitel was almost as obstructive, complaining in general terms of an ill fit without allowing fitter Scarano to determine the precise scope of the problem.
Clearly, then, Uchitel failed to particularize the specific defect giving rise to his rejection of the merchandise. Any defect involved — a mistailoring — would obstensibly have been detectable by the fitter. Finally, the defect was one the Tripler fitter might have cured had he been given the opportunity to do so. As fitter Scarano testified, customers often complained of misfit-tings and, consequently, a fitting room was available to correct any defects.
These were facts and findings expressly proven and implicitly underlying the 1976 judgment rendered in favor of Tripler. They are fatal to Uchitel’s breach of warranty claim here. Under the provisions of section 2-605 of the Uniform Commercial Code, Uchitel’s failure to particularize the defects he complained of, coupled with — what in the context of the 1976 judgment must be assumed to be — the curable nature of those defects “preclude him from relying on the unstated defect to establish breach.”
Concur: Dudley, P. J., Hughes and Asch, JJ.