**LEITCHFIELD DEVELOPMENT COR-PORATION, d/b/a Fraim Mobile Home Sales, Appellant,**

v.

**Paul M. CLARK and Evelyn Clark, Appellees.**

No. 87–CA–138–MR.

Court of Appeals of Kentucky.

June 10, 1988.

Discretionary Review Denied by Supreme Court Sept. 28, 1988.

Donald W. Cottrell, Leitchfield, for appellant.

Natty Bumpo, Brownsville, for appellees.

Before COMBS, COOPER and WILHOIT, JJ.

COOPER, Judge.

This is an appeal from a judgment for the appellees, defendants below, in an action for breach of contract. Subsequent to a trial by a jury, the trial court ordered the contract rescinded. On appeal, the principal argument is whether the trial court erred, as a matter of law, in instructing the

jury. Reviewing the record below, we reverse and remand.

The facts relative to this action are as follows: on August 7, 1986, the appellant Leitchfield Development Corporation, d/b/a Fraim Mobile Home Sales, filed this action against the appellees, Paul M. Clark and his wife, Evelyn Clark, to enforce the terms of a contract under which the appellees agreed to purchase a 1986 Scott double-wide mobile home for the purchase price of $23,500. Under the terms of the contract, the appellees paid $4,500 down and were to pay an additional $8,000 at the time of delivery with the balance of $12,000 to be financed by the appellant. Alternatively, the appellant sought to recover possession of the mobile home as well as its costs and any respective losses.

The appellees filed an answer and counterclaim alleging that they refused delivery of the mobile home as a result of its damaged condition and "nonmerchantability." The appellees demanded recovery of their down payment of $4,500 "plus any and all damages sustained by them." Subsequent to discovery by all parties, the action was tried by a jury. In its instructions to the jury, the trial court instructed it to answer the following question:

Did the mobile home, upon its delivery to Paul M. Clark and Evelyn Clark, fail to conform to their purchase contract in any respect?

Subject to its deliberation, the jury answered the trial court's instruction affirmatively. As a result, the trial court ordered the appellant to return the down payment to the appellees and allowed it to recover possession of the mobile home. Prior to the trial court's instructing the jury, the appellant objected, arguing that the appellees had an obligation to allow the appellant to cure and correct any defect prior to rejecting the mobile home as nonconforming. It is from such judgment that the appellant now appeals.

Although the parties agree that the contract in question is governed by the provisions of Article 2 of the Uniform Commercial Code, they disagree as to the relationship between KRS 355.2–508 and KRS 355.-2–601. Specifically, they disagree as to whether the latter statute is limited by the language of KRS 355.2–508. KRS 355.2–601 states as follows:

Buyer's Rights on Improper Delivery.

Subject to the provisions of this article on breach in installment contracts (KRS 355.2–612) and unless otherwise agreed under the sections on contractual limitations of remedy (KRS 355.2–718 and 355.-2–719), if the goods or the tender of delivery fail in any respect to conform to the contract, the buyer may

(a) reject the whole; or

(b) accept the whole; or

(c) accept any commercial unit or units and reject the rest.

Nevertheless, the "perfect tender rule" articulated in KRS 355.2–601 is apparently limited by the language contained in KRS 355.2–508. That statute states as follows:

Cure by Seller of Improper Tender or Delivery—Replacement.

1) Where any tender or delivery by the seller is rejected because nonconforming and the time for performance has not yet expired, the seller may seasonably notify the buyer of his intention to cure and may then within the contract time make a conforming delivery.

2) Where the buyer rejects a nonconforming tender which the seller had reasonable grounds to believe would be acceptable with or without money allowance the seller may if he seasonably notifies the buyer have a further reasonable time to substitute a conforming tender.

And, the strict language of KRS 355.2–601 seems to be modified by the language of KRS 355.2–605. The latter reads as follows:

Waiver of Buyer's Objections by Failure to Particularize.

1) The buyer's failure to state in connection with rejection a particular defect which is ascertainable by reasonable inspection precludes him from relying on the unstated defect to justify rejection or to establish breach

a) where the seller could have cured it if stated seasonably; or

b) between merchants when the seller has after rejection made a request in writing for a full and final written statement of all defects on which the buyer proposes to rely.

2) Payment against documents made without reservation of rights precludes recovery of the payment for defects apparent on the face of the documents.

In the pleadings below, as well as in the argument before the trial court, the appellees argued that at the time that the mobile home was delivered to them, it failed to conform to the terms of the contract and that as a result they had a right to reject it under the language of KRS 355.2–601. The record discloses that when the mobile home was being delivered to the appellees' property in Grayson County one corner of it was damaged as it was being moved from a paved road onto a dirt road leading toward their property. On the day after the delivery, a representative of the appellant attempted to repair the damage involved and subsequently entered into dispute with the appellees as to the damage and physical condition of the home. Although the representative assured the appellees that the mobile home would be repaired and properly situated and that any resulting problems would be cured, the appellees stated that they would not accept it.

Similarly, a week later, a factory representative came to the appellees' property and attempted to complete the set-up of the home. Nevertheless, Mr. Clark informed the appellant's representative, as well as the representative from the factory, that he did not want anything done to it and that they would be forced to remove it from their property as he was not accepting it. As a result of such actions, the appellant filed this action for breach of contract. Although during the trial there was testimony by the appellant's expert that the damage could have been repaired for $75.00, the appellees insisted they had a right to reject the goods as nonconforming given the language of KRS 355.2–601.

█ Conversely, in the trial below the appellant argued that the "perfect tender rule" is modified and limited by the language contained within KRS 355.2–508. In effect, it argued that it had a reasonable opportunity to cure any existing defect and that the appellees acted wrongfully in rejecting the whole without allowing it such an opportunity. Reviewing the applicable provisions of Article 2 of the Uniform Commercial Code, as well as the law in this jurisdiction and in other jurisdictions, we find that the appellant's argument is correct and that the trial court erred in its instruction to the jury.

Although apparently no appellate court in this jurisdiction has construed the relationship between KRS 355.2–508 and KRS 355.2–601, courts in other jurisdictions have ruled that the right of a seller to cure an improper tender or delivery modifies or limits the perfect tender rule set forth in KRS 355.2–601. Perhaps the most cogent analysis of the relationship between the two sections of Article 2 is that articulated by the court in *Uchitel v. F.R. Tripler & Co.,* 107 Misc.2d 310, 434 N.Y.S.2d 77, 30 UCC Rep. Serv. 933 (N.Y.Sup.Ct.1980). There the court, in analyzing a breach of contract action in which defective garments made by a seller were delivered to a buyer, stated in part as follows:

> The UCC sets forth the general rule that "if the goods or the tender of delivery fail in any respect to conform to the contract, the buyer may reject the whole" and upon "a rightful rejection" sue for breach of contract or breach of warranty (UCC §§ 2–601, 2–711, 2–313–318). The seemingly harsh "perfect tender" rule is tempered by § 2–508, which provides an exception to the requirement of an immediate perfect tender.
>
> Under § 2–508, a seller, in two instances, is permitted to cure an initial improper tender. First, where the time for performance has not yet expired, the seller may seasonably notify the buyer of his intention to cure and may then cure with a conforming delivery.... Second, where the time of performance has expired but the seller had reason to believe a nonconforming tender would be accepted, he may seasonably notify the buyer

and tender conforming goods.... Case law has held that where a buyer unreasonably refuses to permit a seller to exercise his right to cure, no breach of warranty action premised on the defect sought to be cured may be maintained [citations omitted].

In the 1976 litigation, the court credited the testimony of Tripler's lead fitter, Ceasare Scarano, that Uchitel peremptorily refused Tripler a chance to cure any mistailoring by refitting or altering the suit. Implicit in that court's finding that "Uchitel *summarily* refused alteration" was the proposition that in the context of retail clothing sales practices, such a refusal was unreasonable. That determination bars Uchitel from bringing an action for defects his recalcitrance prevented from curing [citations omitted].

*Id.* 107 Misc.2d 310, 434 N.Y.S.2d 77, 30 UCC Rep.Serv. at 938–939.

Similarly, other courts have ruled that the seller's right to cure takes precedence over an absolute right of refusal on the part of the buyer if the goods are nonconforming "in any respect." Such analysis prevails in situations involving the delivery of a mobile home by the seller to a buyer. In *Stephenson v. Frazier*, 399 N.E.2d 794, 28 UCC Rep.Serv. 12 (Ind.Ct.App.1980) the Indiana Court of Appeals held that a seller's right to cure a nonconforming tendered delivery, if communicated to the buyer, prohibits the buyer from rescinding the contract on the basis of a defective condition. The facts confronting the court involved the delivery of a mobile home to the Stephensons by Frazier. At the time the modular home was being installed on their land, the Stephensons complained to Frazier of the following defects: loose paneling, a water mark in the bathroom that had not been repaired as promised, broken storm window frames, a wrinkled roof, missing aluminum siding, crooked window frames, missing axles and wheels and no bathroom mirror. Additionally, although not an issue relative to the case *sub judice*, there was a complaint that the foundation involved was defective. Following a dispute, Frazier sent the buyers a letter stating that he was "ready, willing and able" to repair the defects in question and perform his obligations to the satisfaction of the buyers. In reviewing such evidence, the court held that the buyers were prohibited from rescinding the contract in question. It specifically stated that "Ind Code 26-1-2-508 grants a seller the right to cure any nonconformance upon notifying the buyer of his intention to do so." *Id.* 399 N.E.2d 794, 28 UCC Rep.Serv. at 15. It stated that the letter by the seller to the buyer was clearly notice of an intention to cure defects in the modular home and that therefore the buyer could not rescind the contract.

Similarly, in *Gigandet v. Third National Bank of Nashville*, 333 So.2d 557, 19 UCC Rep.Serv. 506 (Ala.1976), the Alabama Supreme Court ruled that a seller has a reasonable opportunity to correct defects in nonconforming goods notwithstanding the strict language contained in § 2–608. There, the buyers purchased a mobile home from Treasure Island Mobile Homes. The Third National Bank of Nashville, Tennessee, financed the sales to the dealer. As such, it retained a security interest in each mobile home which was sold. The buyer stated that at the time the trailer was delivered, he looked it over and determined that there were numerous defects although the seller assured him that they would be taken care of. Upon discovering additional defects once he moved into the trailer, the buyer moved out and attempted to revoke his acceptance of the goods.

During the trial, evidence was presented by the seller that a repairman had been sent to the mobile home in an attempt to get an estimate of what it would cost to repair the defects. The buyer then told him that he did not want it fixed by the seller but by the manufacturer. The narrow question presented to the court was whether the buyer justifiably revoked his acceptance to such an extent as to amount to a cancellation. In ruling that the buyer failed to act properly so as to revoke his acceptance, the court stated as follows:

A seller has a reasonable time to attempt to correct defects in the goods, Anderson, UCC, Sales, § 2–608:28. Here, after the bank came into the pic-

ture it sent Poore to attempt to cure the defects but Gigandet would not permit Poore to do the job or even make an estimate of what it would cost the bank for him to do it. But the Gigandets refused to let him inspect or repair the trailer.

The trial court could have concluded from the evidence that under Tit 7A, § 2–711, the buyer did not rightfully "reject" or "justifiably revoke acceptance" of the mobile home.

*Id.* 333 So.2d 557, 19 UCC Rep.Serv. at 509.

Such analysis by the aforementioned courts is supported by Professors Leibson and Nowka in their work on the Uniform Commercial Code of Kentucky. *See* D. Leibson and R. Nowka, *The Uniform Commercial Code of Kentucky* (1983). The latter argue persuasively that KRS 355.2–508 operates as an important limitation upon the buyer's right to reject given the overall social policies of promoting commercial transactions. In Section 2.5(B) of their work, Leibson and Nowka write as follows:

> This section operates as a governor on the "perfect tender rule" of § 2–601. It applies when rejection occurs and operates in certain situations to preclude the buyer from rejecting, at least for the time being. The section is an important one. Its purpose is to uphold contracts whenever possible and whenever it is reasonable to expect the buyer to allow the seller to try and cure the nonconformity.

*Id.* at 133.

■ Although the appellate courts in this jurisdiction have not specifically attempted to rule on the relationship between KRS 355.2–601 and KRS 355.2–508(1), (2), an analysis of previous decisions, under both the Uniform Sales Act as well as the Uniform Commercial Code, seems to indicate that the seller's right to cure takes precedence over a buyer's absolute right to reject a nonconforming tender or delivery. In *Chaplin v. Bessire & Company*, Ky., 361 S.W.2d 293 (1962), buyers of a walk-in refrigerator chamber under a conditional sales agreement brought an action against the seller to rescind the contract on the grounds of breach of warranty. In ruling that a question of fact existed as to whether the buyers rescinded the contract within a reasonable time, the court ruled that when goods are delivered in a defective condition or acquire such defects over a period of time, the buyer has the duty to give the seller an opportunity to cure such defects:

> Secondly, with a large and costly installation such as the one involved in this case, the buyer has a [sic] least a moral right, if not a legal duty, to give the seller a fair opportunity to correct the defective condition, and certainly he does not lose his right of rescission by first exhausting that avenue.

*Id.* at 297.

In effect, the court, in ruling that a seller had the right to remedy defects within a reasonable time, ruled that the right to cure nonconforming goods takes precedence over a buyer's absolute right of refusal.

In *Ford Motor Co. v. Mayes*, Ky.App., 575 S.W.2d 480 (1978), the court sanctioned the seller's right to cure when the contract limited the buyer's remedy to repair and replacement of parts, and stated that if the seller were unsuccessful in curing the defect within a reasonable time then "the buyer is entitled to revoke his acceptance of the vehicle." *Id.* at 484. Consequently, both the *Chaplin* and *Mayes* courts, although not strictly dealing with the relationship between KRS 355.2–601 and KRS 355.2–508, do hold that a seller has a right to cure in a situation in which a buyer is attempting to revoke his acceptance.

■ Here, there was substantial testimony in the trial below that the defects to the mobile home were minor in comparison to the purchase price. Although appellee Paul Clark testified that the trailer was simply not what it should be, an expert testifying on behalf of the appellant stated that the damaged panel section of the trailer could be repaired for $75.00. Consequently, the trial court erred in instructing the jury that the buyers had a right to reject the mobile home if it failed to "con-

form to their purchase contract in any respect." Therefore, the judgment below must be reversed and a new trial granted.

In effect, a question of fact exists for the jury as to whether the mobile home at the time of its delivery was nonconforming and whether the seller, the appellant herein, seasonably notified the buyer of his intention to cure within the time allowed for performance. Alternatively, a question may exist under Subsection 2 of KRS 355.-2–508 whether the seller, once the buyer rejected the mobile home as nonconforming, had reasonable grounds to believe that the mobile home would be acceptable with or without money allowances, and if so, whether the seller seasonably notified the buyer so as to have a further reasonable time to substitute a conforming tender.

The judgment below is reversed and the trial court is directed to grant a new trial for the appellant.

COMBS, J., concurs.

WILHOIT, J., concurs in part and files a separate opinion.

WILHOIT, Judge, concurring in part.

I concur with the majority that KRS 355.-2–508 places restrictions upon buyer's right to reject under KRS 355.2–601. Based upon the record before us, however, I do not see how subsection (1) of KRS 355.2–508 has any application to this case. It does not appear that the parties had set any specific "time for performance." Under these circumstances the date of delivery of the mobile home would seem to constitute the "time for performance." There was no offer to cure the defect on that day and from the evidence cure on that day would have been impossible.

Should the evidence upon retrial be the same, then I believe only an instruction regarding subsection (2) of KRS 355.2–508 would be appropriate.