25 F.3d 1053
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 AMERICONTAINER LIMITED PARTNERSHIP, an Illinois Limited
Partnership, Appellee, Cross-Appellant, Plaintiff,
and Counter-Defendant
v.
Robert S. RANKIN individually and d/b/a R & R Industrial
Park, Defendant, Counter-claimant Appellant,
and
Sharyn Rankin, Defendant and Cross-Appellee.
 Nos. 93-2001, 93-2335 and 93-3115.
 United States Court of Appeals, Seventh Circuit.
 Argued Feb. 11, 1994.
Decided May 24, 1994.
 
 Before CUMMINGS, CUDAHY and MANION, Circuit Judges.
 
 ORDER
 
 1
 Defendant Robert Rankin appeals the entry of a judgment against him awarding $1,899,822.70 in compensatory damages, $550,480.13 in prejudgment interest, $27,312.00 in attorneys fees and $2,271.45 in costs to AmeriContainer Limited Partnership ("AmeriContainer"). In its cross-appeal, AmeriContainer appeals the district court's grant of defendant Sharyn Rankin's motion for a directed verdict.
 
 Factual Background
 
 2
 AmeriContainer is a limited partnership formed August 8, 1989 under the laws of the State of Illinois. Defendants Robert Rankin and his wife, Sharyn Rankin, are citizens of Indiana and are the joint owners of a 120 acre tract of land in Hammond, Indiana on which an industrial facility called R & R Industrial Park is located. At the heart of this controversy is a manufacturing facility--referred to as "Building No. Two"--located at the R & R Industrial Park.
 
 
 3
 In April 1989, Ralph DeFalco, as representative for a yet to be formed AmeriContainer, approached Robert Rankin regarding the lease of a portion of Building No. Two. Although Building No. Two was by all accounts in a state of significant disrepair at the time, Mr. DeFalco apparently believed it was suitable to AmeriContainer's needs--AmeriContainer planned to use the facility to manufacture steel shipping containers.
 
 
 4
 On April 19, 1989, Rankin and DeFalco (on behalf of AmeriContainer) entered into a "Commercial Lease Deposit Receipt Agreement." This agreement provided that AmeriContainer would lease 65,890 square feet of plant area and 8,525 square feet of lunchroom and office space in Building No. Two at a rate of $2.65 per square foot from Rankin for a term beginning April 28, 1989 and lasting until May 1, 1995. The lease required that "[a] minimum of 20,000 square feet of the 'plant floor' [would] be ready for production by May 15, 1989 [and that] [t]he remaining 45,890 square feet [of plant floor would] be complete[ ] by July 1, 1989" (District Court's Findings of Fact p 17) The agreement also provided that the men's and women's locker rooms [would] be complete[ ] by June 1, 1989, and the "main office upper level" by July 1, 1989. This agreement was, however, contingent on AmeriContainer officially forming as limited partnership by April 28, 1989--if AmeriContainer was not formed by that date, the agreement was to have no effect. AmeriContainer paid Rankin $17,094 as a security deposit.
 
 
 5
 On May 23, 1989 the lease agreement was revised, moving the completion dates for the various portions of Building No. Two back approximately a month. The revision established that "completion" would occur at the point at which the various areas of Building No. Two were certified for use and occupancy by the City of Hammond.
 
 
 6
 As of August 1, 1989 AmeriContainer had not yet been formed. Rankin therefore served AmeriContainer's representative with notice of termination of the lease. Rankin and representatives of AmeriContainer met on August 7, 1989 to negotiate a second revision to the lease. The second revision, executed on August 8, 1989, provides, among other things, that:
 
 
 7
 (1) In return for payment of August's rent, Rankin rescinded the notice of termination;
 
 
 8
 (2) AmeriContainer waived any claims for breach of the lease which occurred prior to August 8, 1989;
 
 
 9
 (3) Americontainer would properly form as a limited partnership by August 8, 1989;
 
 
 10
 (4) The plant area would be eligible for an occupancy permit by September 1, 1989;
 
 
 11
 (5) The office areas would be eligible for an occupancy permit by October 1, 1989; and
 
 
 12
 (6) If either the required occupancy permits was not issued through no fault of AmeriContainer, AmeriContainer "would have the right to terminate the agreement."
 
 
 13
 AmeriContainer paid Rankin $14,550 as August rent. On August 8, 1989, AmeriContainer was formed as a limited partnership.
 
 
 14
 On September 8, 1989, the building commissioner of Hammond issued AmeriContainer a certificate of occupancy for Building No. Two which was contingent upon three events: (1) the approval of the electrical system in the offices, locker rooms, and north end of the building by the electrical inspector; (2) fire department approval; and (3) "work being completed in the east side of the plant, column 48 or 49, at the north end of the building and adjacent to the locker rooms and office areas" (District Court's Findings of Fact p 40). However, between August 1, 1989 and October 1, 1989 the only improvements Rankin made to Building No. Two were repairing a portion of the roof and repairing siding.
 
 
 15
 In October 1989, AmeriContainer terminated its lease with Rankin. On November 22, 1989, AmeriContainer executed a lease for a substitute facility and began operation in December 1989. The lease for the substitute facility was for a ten-year period and the agreed rent was greater than AmeriContainer's rent would have been for Building No. 2. Other relevant facts are set out at the point where such information is pertinent.
 
 Proceedings in District Court
 
 16
 In November 1989, AmeriContainer brought suit for breach of lease and constructive eviction. In January 1990, the named defendants filed an answer denying the breach of lease and constructive eviction and brought a counterclaim alleging that AmeriContainer had breached the lease. In January 1991, the case was tried to the court without a jury. During the course of the trial, the district court granted defendant Sharyn Rankin's motion for a directed verdict and dismissed her from the case.
 
 
 17
 In March 1993--over two years later--the district court entered an order containing findings of fact and conclusions of law. Based on photographs taken of the building in the early part of October 1989, the district court found that as of that date significant portions of the roof were damaged or incomplete; that portions of the ceiling were exposed; that 25% of the work on the outside of the building was incomplete; and that there were gaps in the sidewalls and broken windows. Based on these and other findings the court concluded that Rankin had failed to perform material conditions under the lease: (1) he failed to comply with the lease's requirement that the plant portion be eligible for issuance of an occupancy permit on September 1, 1989; (2) he failed to comply with the requirement that offices, men's and women's locker rooms, and lunch room would be complete and ready for occupancy by October 1, 1989; (3) he failed to deliver possession of the plant floor and men's and women's locker rooms; (4) he failed to provide adequate electrical power; and (5) he failed to provide the premises in wind and water tight condition.
 
 
 18
 The district court awarded AmeriContainer $60,744 to compensate it for its security deposit and its rent payments to Rankin from May through October 1989. The district court also awarded AmeriContainer $1,790,921.70 to compensate it for the additional costs it incurred to rent a substitute facility and $48,127.00 for other expenses it incurred. Finally, the district court awarded attorney's fees and costs. In August 1989, the district court awarded AmeriContainer $550,480.13 in prejudgment interest.
 
 Analysis
 
 19
 On appeal, Robert Rankin ("Rankin")[1] makes several claims of error: (1) that the district court erred when it determined that he breached the lease with AmeriContainer; (2) that the district court's calculation of damages was, in various respects, incorrect; and (3) that the district court lacked jurisdiction over the controversy. AmeriContainer's only claim in its cross-appeal is that the district court erred when it granted Sharyn Rankin's motion for a directed verdict and dismissed her from the suit.[2]
 
 
 20
 Rankin's first contention on appeal is that his failure to satisfy the various lease requirements was the result of AmeriContainer's failure to supply him with certain information necessary to secure the required city permits. As Rankin correctly notes, performance of a contract is excused when the conduct of one party prevents the other party from performing its obligations. Stephenson v. Frazier, 399 N.E.2d 794, 797-798 (Ind.App.1980). Rankin is also correct that the district court made findings of fact which support such a defense, principally that AmeriContainer's failed to provide detailed information and drawings regarding its electrical needs to an appropriate contractor and that without such detailed information an electrical permit could not be issued. But while AmeriContainer may have been responsible for the failure to obtain and electrical permit and Rankin's failure to provide adequate electrical power,[3] this action did not prevent Rankin from performing his other obligations under the lease. Rankin wrongly failed to deliver the premises in wind and water-tight condition and to complete the offices, locker rooms, and lunch room by October 1, 1989 as he had previously agreed. Moreover, although AmeriContainer's failure to provide the required information may have made it impossible to obtain an electrical permit, Rankin does not contend that he had satisfied the other conditions placed by the building inspector on the occupancy permit. The district court did not err, therefore, when it concluded, despite its findings that AmeriContainer had failed to supply certain information, that Rankin had breached the lease.
 
 
 21
 Rankin next contends that the district court erred when it determined that AmeriContainer was entitled to damages as a result of this breach. Rankin contends that the lease unambiguously provides that termination was the sole remedy for breach. We disagree. The district court correctly determined that the lease was ambiguous. The August 1989 revision to the lease provides that "[i]n the event ... either [the occupancy permit for the plant floor or the offices and locker room] is not issued ... [AmeriContainer] shall have the right to terminate the agreement" (emphasis supplied). Rankin claims that "the" in this provision means that AmeriContainer only remedy had in the event of breach was termination of the contract. The provision, however, could just as easily be read to give AmeriContainer the right to terminate the lease while retaining the right to pursue other remedies. A natural reading does not necessarily lead to the limited understanding of the provision that Rankin suggests. "It is a cardinal rule of construction of legal instruments that an instrument will be construed strictly against its author ...," Chrysler Corp. v. Hanover Insurance Co., 350 F.2d 652, 655 (7th Cir.1965), certiorari denied, 383 U.S. 906, and the district court found here that this portion of the agreement was drafted by Rankin. This portion of the lease must therefore be construed against Rankin and, therefore, AmeriContainer clearly has the right to pursue remedies other than termination.
 
 
 22
 Rankin also contends that the district court's calculation of damages is erroneous in several respects. First, he claims that the district court erred when it relied on plaintiff's Exhibit 7C to calculate the extent of AmeriContainer's damages resulting from rental of space to substitute for Building No. Two. More precisely, Rankin claims that the monthly rent set out in Exhibit 7C for the substitute facility is derived from negotiations AmeriContainer had with the owner of the substitute facility rather than the monthly rent provided for in actual lease. Rankin appears to be correct: the amounts listed in Exhibit 7C do not comport with those on the actual lease (App. 133), or for that matter with the district court's findings of fact[4] (AmeriContainer, in fact, does not appear to contest this point). And since the district court's determination of damages was not based on the actual costs incurred by AmeriContainer, the district court's award must be vacated.
 
 
 23
 This was not the only error made in the calculation of damages. As Rankin correctly points out, the district court also failed to discount to present value the portion of the damage award that compensates AmeriContainer for its future costs. When damages are awarded to compensate a party for costs it will incur in the future--as opposed to damages such as back rent awarded to compensate for expenses it has already incurred--the award must be discounted to present value. See generally 22 Am.Jur.2d Damages Sec. 678. The district court must therefore reduce to present value any amount it awards AmeriContainer to compensate it for rental payments that at the point judgment is re-entered have not yet accrued.
 
 
 24
 The district court also erred when it awarded pre-judgment interest on the portions of the damage award that compensate AmeriContainer for its future losses. The award of pre-judgment interest compensates a party for having been deprived of the use of that money in the period between the occurrence of the loss and the entry of judgment (or put another way, pre-judgment interest compensates the party for the interest it did not earn while the money at issue was held by the opposing party). Thus, prejudgment interest is appropriate when the damage award compensates a party for costs it has already incurred. However, when an award of damages is intended to compensate a party for some expense it will incur in the future, pre-judgment interest is inappropriate. Since the party to receive the award of damages has not been deprived of the use of any money, awarding pre-judgment interest would serve only as penalty (or to the receiving party, a windfall). The district court, therefore, erred when it awarded pre-judgment interest on the entire damage award; such interest is appropriate only on that portion of the damage award that compensates AmeriContainer for the costs it has already incurred.[5]
 
 
 25
 Rankin's next claims that district court lacked personal jurisdiction over the case. Jurisdiction here is based on diversity of citizenship. 28 U.S.C. Sec. 1332. A limited partnership is the citizen of the state of domicile of each and every partner, general and limited, Carden v. Arkorna Associates, 494 U.S. 185. From the record before this Court, the citizenship of AmeriContainer's general and limited partners at the time of the filing of the complaint is uncertain. See Dausch v. Ryske, 9 F.3d 1244, 1245 (7th Cir.1993) (diversity must be shown as of date complaint is filed). On remand, the district court should establish--as the documentation offered by AmeriContainer suggests--that the parties are in fact diverse and that it does, therefore, have jurisdiction over the case.
 
 
 26
 The final issue to be addressed is one raised by AmeriContainer. In its cross-appeal, it claims that the district court erred when it granted Sharyn Rankin's motion for a directed verdict and dismissed her from the case. The district court found by the preponderance of the evidence that Sharyn Rankin was not a part owner of R & R Industrial Park and did not "participate in the binding decisions [of] the business." The court concluded that her "sole involvement with R & R Industrial Park was [as] an employee." The district court concluded that Robert Rankin was the sole proprietor of R & R Industrial Park. The district court's findings of fact should not disturbed unless they are clearly erroneous, Kerr-McGee Chemical Corp. v. Lefton Iron & Metal Co., 14 F.3d 321, 324 (7th Cir.1994), and despite AmeriContainer's claims to the contrary the district court's findings regarding Sharyn Rankin's role in R & R Industrial Park are not clearly erroneous. AmeriContainer on this point is in fact little more than a claim that the district court should have believed the testimony of its witness, Ralph DeFalco (who offered various testimony tending to show that Sharyn Rankin was or appeared to be an owner of R & R Industrial Park), rather than that of Robert and Sharyn Rankin (who offered testimony tending to show that it was clear to all involved that Sharyn was an employee). Such an argument must, of course, fail. Although it surely rankles AmeriContainer, the district court clearly was within its authority when it chose to credit Rankin's evidence over that of AmeriContainer.
 
 
 27
 AmeriContainer, however, also contends that even if the district court is correct that Sharyn Rankin was not a proprietor of R & R Industrial Park, she should not have been dismissed from the case. AmeriContainer argues that as a "co-owner of the property that underlies the Lease [Sharyn Rankin] is a necessary party to an action under Indiana law...." (Br. 43). Sharyn and Robert Rankin owned the land in question as tenants by the entirety. "[A]s a general rule any ... cotenant may lease his undivided interest in the common property ... without the consent of the other cotenants...." Simkin v. New York Central Railroad Co., 214 N.E.2d 661, 663 (Ind.1966) (quoting 14 Am.Jur. Co-Tenancy Sec. 87). Such a lease, however, is in no way binding upon the interests of the persons with whom the lessor co-owners the property. 20 AmJur.2d Co-Tenancy and Joint Ownership Sec. 100. And since such lease is not binding on the co-owners of the property, they are not necessary parties to dispute involving the terms of the lease. Such an action does not implicate the interests of the co-tenants not party to the lease.[6] AmeriContainer, however, cites French v. National Refining Co. 26 N.E.2d 47, 49 (1940) for the proposition that "when a husband and wife own property as tenants by the entireties, both are necessary parties to an agreement to terminate a lease" (Br. 44). But in French both the husband and wife were parties to the lease in question. Here, however, the district court determined that Robert Rankin alone was party to the lease. The district court, therefore, did not err when it granted Sharyn Rankin's motion for a directed verdict and dismissed her from the suit. Its determination that she was merely an employee of R & R Industrial Park and not a party to the lease was not clearly erroneous. And since she is not a party to the lease, she is not a necessary party to the suit--a truth unchanged by fact that she is a co-owner of the underlying property. It should be noted that the issue of the enforceability of AmeriContainer's judgment is not before us so that we do not decide that Indiana law question best left to its courts.
 
 Conclusion
 
 28
 Since the district court did not err when it concluded that--despite its findings that AmeriContainer had failed to supply certain information--Rankin had breached the lease, its determination in this regard is affirmed. However, since there were numerous errors in the calculation of damages, the award of damages is vacated. The case is remanded for the district court to recalculate the award of damages and to make other determinations required by this order.
 
 
 
 [1]
 Defendant Sharyn Rankin appears to have adopted most of defendant Robert Rankin's arguments. However, since we hold below that the district court was within its authority when it granted her motion for a directed verdict and dismissed her from the case, this Court treats the defendant's claims of error as being raised by Robert Rankin alone
 
 
 [2]
 Other claims suggested by the parties briefs have been considered, but lack sufficient merit to warrant discussion
 
 
 [3]
 The district court's order can also be read to suggest that it believed that AmeriContainer's interference was not the cause of the failure to obtain the necessary permits--for example, the district court found that Rankin had failed to deliver acceptable blueprints to the appropriate officials. However, since the court did not make an explicit finding on the cause of the failure to obtain the necessary permits, we have given Rankin the benefit of the doubt. But it is clear that even if the district court had reached the conclusion Rankin urges, it does not help his cause--AmeriContainer's actions do not excuse Rankin's other acts in breach of the lease
 
 
 [4]
 For example, in its findings of fact the district court determined that the annual rent for the first year at the substitute facility was $17,233.35. Exhibit 7C lists, however, the monthly rent for the first year as $24,460.37
 
 
 [5]
 This Court is also puzzled by the fact that the district court awarded AmeriContainer damages to cover the rental payments AmeriContainer made in May, June and July 1989. In the August 1989 revision of the lease agreement, however, AmeriContainer waived "any claim for breach of the lease which occurred prior to August 8, 1989." The district court offers no explanation for this discrepancy. On remand, therefore the district court should address the issue
 
 
 [6]
 Co-tenants are, however, necessary parties in actions involving substantive determinations regarding the land itself. Rees v. Panhandle Eastern Pipe Line Co., 377 N.E.2d 640, 645 (Ind.App.1978). In such cases their interests are clearly implicated