No. 13899

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

MONTANA SEEDS, INC., a Montana Corporation,

Plaintiff and Respondent,

-vs-

MAURICE HOLLIDAY and/or HOLLIDAY
LAND & LIVESTOCK, CO.,

Defendants and Appellants.

---

Appeal from:   District Court of the Fourteenth Judicial District,
               Honrable Nat Allen, Judge presiding.

Counsel of Record:

    For Appellants:

        Potter and Neier, White Sulphur Springs, Montana
        John V. Potter argued, White Sulphur Springs, Montana

    For Respondent:

        Keil and Gustafson, Conrad, Montana
        Dale L. Keil argued, Conrad, Montana

---

Submitted:  May 3, 1978

Decided: AUG 9 1978

Filed: AUG 9 1978

*Thomas J. Kearney*
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court

Defendants were adjudged liable to plaintiff in the amount of $15,925 plus interest in Meagher County District Court. This is an appeal from that judgment and from an order denying defendants' motion to amend the findings of fact and conclusions of law.

Maurice Holliday is the owner and manager of Holliday Land and Livestock Co. of Martinsdale, Montana. In early 1974, he met with representatives of Montana Seeds, Inc., a Conrad business with which he had dealt in the past. After a lengthy discussion, Montana Seeds shipped an order of 200 bushels of Era Spring wheat, 8,200 pounds of Remont Sainfoin seed, and 1,250 pounds of Regar Bromegrass seed to Holliday on about April 17, 1974. Two days later, Montana Seeds mailed a bill of $13,425 for the shipment to Holliday. Montana Seeds sent a second, third and fourth bill showing a balance due for the same amount on April 30, May 31 and June 25, 1974. On the July 25 bill and later monthly statements Montana Seeds added interest of 1 1/2 percent per month. However, Montana Seeds did not claim that percentage of interest in this action, but instead, sought legal interest of six percent.

Around April 24 and 29, 1975, Montana Seeds shipped 1,000 and 1,500 pound loads of Remont Sainfoin seed to Holliday, billing him an additional $2,500 therefor. At trial Holliday testified the 1,500 pound portion of this shipment was mistakenly delivered to a Tom Lane, who lived nearby.

Both the February, 1974 and the February, 1975 shipments left Montana Seeds' loading dock destined for delivery to Holliday according to company records.

Montana Seeds continued to send monthly bills to Holliday up through the time it filed this action. Holliday admits making no payment toward these orders. There is no indication

-2-

that the bills sent to Holliday were returned to Montana Seeds or that Holliday complained either regarding the bills or the seed itself prior to this action. At trial, Holliday did not deny that he had received all the February 1974 shipment. In explaining why he did not complain about the bills for the 1,500 pound portion of the February 1975 shipment, he testified that he thought the bills were for the 1,000 pound portion which he did receive.

On appeal, Holliday asserts that the District Court's findings and judgment were not supported by the evidence because:

1. Montana Seeds failed to prove it had physically delivered the seed.

2. Montana Seeds failed to show there was an account stated.

3. The Statute of Frauds prevents enforcement of the claim.

Holliday first contends that Montana Seeds failed to establish its claim for goods "sold and delivered" by not proving actual delivery. The contention is specifically directed at the language used in plaintiff's pleadings--that the seed was "sold and delivered" to defendant. While a claimant's pleadings must state a claim upon which relief can be granted; plaintiff's choice of words will not dictate the elements of proof necessary for him to prevail. Rather, plaintiff's right of recovery is governed by the facts of the case and their relation to applicable law. Hidden Hollow Ranch v. Collins (1965), 146 Mont. 321, 406 P.2d 365.

-3-

Before Montana's adoption of the Uniform Commercial Code (U.C.C.), actual delivery was an essential element of seller's proof for recovery of the price of goods allegedly shipped to the buyer. Actual delivery determined in whom title to the goods vested. With the adoption of the U.C.C., effective 1965, the deciding concept of title was abandoned and replaced with concepts which in the drafters' view were based on more easily observable facts. Under the U.C.C. the concept utilized in determining the rights of a seller in an action for the price is that of acceptance. Section 87A-2-709 (1)(a), R.C.M 1947 provides:

> " * * * When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under the next section, the price
>
> "(a) of goods accepted or of conforming goods lost or damaged within a commercially reasonable time after risk of their loss has passed to the buyer;"

Section 87A-2-606, R.C.M. 1947 provides:

> "What constitutes acceptance of goods. (1) Acceptance of goods occurs when the buyer
>
> "(a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or
>
> "(b) fails to make an effective rejection (sub section (1) of section 87A-2-602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or
>
> "(c) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.
>
> "(2) Acceptance of a part of any commercial unit is acceptance of that entire unit."

Under the facts of the instant case there were two shipments on which Montana Seeds seeks recovery, one in February 1974 and another in February 1975. There was no

evidence produced that Holliday did not receive the February 1974 shipment. Apparently these goods were received and put to use. Having done so, would constitute acceptance, under Section 87A-2-606(1)(a) and (c), R.C.M. 1947 and entitle the seller to recover the price under section 87A-2-709(1)(a), R.C.M. 1947.

The same is true of the portion of the February 1975 shipment which Holliday admitted having received.

Part of the February 1975 shipment was delivered to the wrong address according to Holliday's testimony. This shipment like the others, was to be delivered to Holliday without specification of a particular destination. A seller's responsibility as to conforming goods under such circumstances is governed by section 87A-2-509, R.C.M. 1947, which provides in part:

"Risk of loss in the absence of breach. (1) Where the contract requires or authorizes the seller to ship the goods by carrier

"(a) if it does not require him to deliver them at a particular destination, the risk of loss passes to the buyer when the goods are duly delivered to the carrier * * *."

Taken in conjunction with section 87A-2-709(1)(a), R.C.M. 1947, this section clearly places the risk of loss on the buyer, Holliday. The potential harshness of this rule is substantially reduced by retention in the buyer of specific rights to subsequently reject or revoke acceptance where the goods are nonconforming or where the seller otherwise fails to perform in accordance with the terms of the contract. More importantly here, the buyer's cause of action for misdelivery of the goods is against the carrier.

Either as a defense to an action for the price or as a procedural technicality, the failure of Montana Seeds to prove actual delivery under the circumstances of this case was not fatal to their claim.

-5-

Defendant next alleges that there was insufficient evidence to show an account stated. It has long been the law in Montana that "the single indispensable ingredient in an account stated is an exact, certain, and definite balance arrived at by the debtor and creditor." Nelson v. Montana Iron Mining Co. (1962), 140 Mont. 331, 335, 371 P.2d 874, 876. This ingredient, however, may be presumed where the debtor acquiesces to a statement of the balance due submitted by the creditor. As we first held in O'Hanlon Co. v. Jess et al. (1920), 58 Mont. 415, 418, 193 P. 65, 66:

> " * * * where parties have been engaged in a course of dealings and there is an antecedent indebtedness in favor of one as against the other, and an account or bill purporting to be a statement of the account is rendered by the creditor to the debtor, who retains the same for an unreasonable length of time without objection, this is evidence of his assent to the correctness of the account, and, accordingly, is an account stated."

Examination of the record discloses no evidence presented by Holliday to rebut the presumption that the account asserted by Montana Seeds was correct.

Uncertainty in an account can be established by differences between a statement sent to a debtor and the amount claimed by a creditor in an action to collect the debt. Nelson v. Montana Iron Mining Co., supra, 140 Mont. at 337, 371 P.2d at 877. However, here, unlike Nelson, the difference is with respect to interest on the balance due. For at least three months before the filing of this action, a photocopy of Holliday's account was sent to him showing the amounts for the individual orders separate from the interest charges. The total amount owing for the seed remained definite and certain during the entire billing period.

Lastly, Holliday argues the contract here involved is unenforceable because it violates the Statute of Frauds

section 87A-2-201, R.C.M. 1947. Defendant failed to raise this defense in his pleadings and hence cannot maintain it on appeal. Rule 8(c) and 12(b) M.R.Civ.P.; Johnson v. Johnson (1977), _____ Mont. _____, _____, 560 P.2d 1331, 1332, 34 St.Rep. 101, 103. We therefore make no finding as to the adequacy of the defense under the facts of this case.

The judgment and order of the District Court in favor of Montana Seeds is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices