PLATEQ CORPORATION OF NORTH HAVEN *v.*
MACHLETT LABORATORIES, INC.
(10598)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and GRILLO, Js.

Argued January 11—decision released March 8, 1983

*James W. Sherman,* for the appellant (defendant).

*Lorraine W. Osborne,* with whom, on the brief, was *Bronislaw Winnick,* for the appellee (plaintiff).

PETERS, J.  In this action by a seller of specially manufactured goods to recover their purchase price from a commercial buyer, the principal issue is

whether the buyer accepted the goods before it attempted to cancel the contract of sale. The plaintiff, Plateq Corporation of North Haven, sued the defendant, The Machlett Laboratories, Inc., to recover damages, measured by the contract price and incidental damages, arising out of the defendant's allegedly wrongful cancellation of a written contract for the manufacture and sale of two lead-covered steel tanks and appurtenant stands. The defendant denied liability and counterclaimed for damages. After a full hearing, the trial court found for the plaintiff both on its complaint and on the defendant's counterclaim. The defendant has appealed.

The trial court, in its memorandum of decision, found the following facts. On July 9, 1976, the defendant ordered from the plaintiff two lead-covered steel tanks to be constructed by the plaintiff according to specifications supplied by the defendant. The parties understood that the tanks were designed for the special purpose of testing x-ray tubes and were required to be radiation-proof within certain federal standards. Accordingly, the contract provided that the tanks would be tested for radiation leaks after their installation on the defendant's premises. The plaintiff undertook to correct, at its own cost, any deficiencies that this post-installation test might uncover.[1] The plaintiff had not previously constructed such tanks, nor had the defendant previously designed tanks for this purpose. The contract was amended on August 9,

---

[1] The contract incorporated precise specifications in the form of detailed drawings. The drawings for the tank and the tank cover contained specific manufacturing instructions as well as provision 6: "Tank with cover will be tested for radiation leaks after installation. Any deficiencies must be corrected by the vendor."

1976, to add construction of two metal stands to hold the tanks. All the goods were to be delivered to the defendant at the plaintiff's place of business.[2]

Although the plaintiff encountered difficulties both in performing according to the contract specifications and in completing performance within the time required, the defendant did no more than call these deficiencies to the plaintiff's attention during various inspections in September and early October, 1976. By October 11, 1976, performance was belatedly but substantially completed. On that date, Albert Yannello, the defendant's engineer, noted some remaining deficiencies which the plaintiff promised to remedy by the next day, so that the goods would then be ready for delivery. Yannello gave no indication to the plaintiff that this arrangement was in any way unsatisfactory to the defendant. Not only did Yannello communicate general acquiescence in the plaintiff's proposed tender but he specifically led the plaintiff to believe that the defendant's truck would pick up the tanks and the stands within a day or two. Instead of sending its truck, the defendant sent a notice of total cancellation which the plaintiff received on October 14, 1976. That notice failed to particularize the grounds upon which cancellation was based.[3]

On this factual basis, the trial court, having concluded that the transaction was a contract for the sale of goods falling within the Uniform Commer-

---

[2] The purchase order sent by the defendant to the plaintiff stipulated that the goods were to be shipped "F.O.B. Origin."

[3] The defendant sent the plaintiff a telegram stating: "This order is hereby terminated for your breach, in that you have continuously failed to perform according to your commitment in spite of additional time given you to cure your delinquency. We will hold you liable for all damages incured [sic] by Machlett including excess cost of reprocurement."

cial Code, General Statutes §§ 42a-2-101 et seq., considered whether the defendant had accepted the goods. The court determined that the defendant had accepted the tanks, primarily by signifying its willingness to take them despite their non-conformities, in accordance with General Statutes § 42a-2-606 (1) (a),[4] and secondarily by failing to make an effective rejection, in accordance with General Statutes § 42a-2-606 (1) (b).[5] Once the tanks had been accepted, the defendant could rightfully revoke its acceptance under General Statutes § 42a-2-608[6] only by showing substantial impairment of their value to the defendant. In part because the defendant's conduct had foreclosed any post-installation inspection, the court concluded that such impairment had not been proved. Since the tanks were not readily resaleable on the open market, the plaintiff was entitled, upon the defendant's wrongful revocation of acceptance, to recover their contract price, minus salvage value, plus interest. General Statutes §§ 42a-2-703;[7] 42a-2-709

[4] General Statutes § 42a-2-606 (1) (a) provides: "WHAT CONSTITUTES ACCEPTANCE OF GOODS. (1) Acceptance of goods occurs when the buyer (a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity."

[5] General Statutes § 42a-2-606 (1) (b) provides: "WHAT CONSTITUTES ACCEPTANCE OF GOODS. (1) Acceptance of goods occurs when the buyer . . . (b) fails to make an effective rejection as provided by subsection (1) of section 42a-2-602, but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them."

[6] General Statutes § 42a-2-608 (1) provides, in relevant part: "REVOCATION OF ACCEPTANCE IN WHOLE OR IN PART. (1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him . . . ."

[7] General Statutes § 42a-2-703 provides, in relevant part: "SELLER'S REMEDIES IN GENERAL. Where the buyer wrongfully rejects or revokes acceptance of goods . . . or repudiates with respect to a part or the whole, then with respect to any goods directly affected and, if the breach is of the whole contract as provided in section

(1) (b).[8] Accordingly, the trial court awarded the plaintiff damages in the amount of $14,837.92.

In its appeal, the defendant raises four principal claims of error. It maintains that the trial court erred: (1) in invoking the "cure" section, General Statutes § 42a-2-508,[9] when there had been no tender by the plaintiff seller; (2) in concluding, in accordance with the acceptance section, General Statutes § 42a-2-606 (1), that the defendant had "signified" to the plaintiff its willingness to take the contract goods; (3) in misconstruing the defendant's statutory and contractual rights of inspection; and (4) in refusing to find that the defendant's letter of cancellation was occasioned by the plaintiff's breach. We find no error.

Upon analysis, all of the defendant's claims of error are variations upon one central theme. The

42a-2-612, then also with respect to the whole undelivered balance, the aggrieved seller may . . . (e) recover damages for nonacceptance as provided in section 42a-2-708 or in a proper case the price as provided in section 42a-2-709."

[8] "[General Statutes] Sec. 42a-2-709. ACTION FOR THE PRICE. (1) When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under section 42a-2-710, the price (a) of goods accepted or of conforming goods lost or damaged within a commercially reasonable time after risk of their loss has passed to the buyer; and (b) of goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing. . . ."

[9] "[General Statutes] Sec. 42a-2-508. CURE BY SELLER OF IMPROPER TENDER OR DELIVERY; REPLACEMENT. (1) Where any tender or delivery by the seller is rejected because nonconforming and the time for performance has not yet expired, the seller may seasonably notify the buyer of his intention to cure and may then within the contract time make a conforming delivery.

"(2) Where the buyer rejects a nonconforming tender which the seller had reasonable grounds to believe would be acceptable with or without money allowance the seller may if he seasonably notifies the buyer have a further reasonable time to substitute a conforming tender."

defendant claims that on October 11, when its engineer Yannello conducted the last examination on the plaintiff's premises, the tanks were so incomplete and unsatisfactory that the defendant was rightfully entitled to conclude that the plaintiff would never make a conforming tender. From this scenario, the defendant argues that it was justified in cancelling the contract of sale. It denies that the seller's conduct was sufficient to warrant a finding of tender, or its own conduct sufficient to warrant a finding of acceptance. The difficulty with this argument is that it is inconsistent with the underlying facts found by the trial court. Although the testimony was in dispute, there was evidence of record to support the trial court's findings to the contrary. The defendant cannot sustain its burden of establishing that a trial court's findings of fact are clearly erroneous; Practice Book § 3060D; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980); by the mere recitation in its brief of conflicting testimony entirely unsupported by reference to pages of the transcript. Practice Book § 3060F (b). There is simply no fit between the defendant's claims and the trial court's finding that, by October 11, 1976, performance was in substantial compliance with the terms of the contract. The trial court further found that on that day the defendant was notified that the goods would be ready for tender the following day and that the defendant responded to this notification by promising to send its truck to pick up the tanks in accordance with the contract.

On the trial court's finding of facts, it was warranted in concluding, on two independent grounds, that the defendant had accepted the goods it had ordered from the plaintiff. Under the provisions

of the Uniform Commercial Code, General Statutes § 42a-2-606 (1) "[a]cceptance of goods occurs when the buyer (a) after a reasonable opportunity to inspect the goods signifies to the seller . . . that he will take . . . them in spite of their nonconformity; or (b) fails to make an effective rejection."[10]

In concluding that the defendant had "signified" to the plaintiff its willingness to "take" the tanks despite possible remaining minor defects, the trial court necessarily found that the defendant had had a reasonable opportunity to inspect the goods. The defendant does not maintain that its engineer, or the other inspectors on previous visits, had inadequate access to the tanks, or inadequate experience to conduct a reasonable examination. It recognizes that inspection of goods when the buyer undertakes to pick up the goods is ordinarily at the seller's place of tender. See General Statutes §§ 42a-2-503, 42a-2-507, 42a-2-513; see also White & Summers, Uniform Commercial Code (2d Ed. 1980) § 3-5. The defendant argues, however, that its contract, in providing for inspection for radiation leaks after installation of the tanks at its premises, necessarily postponed its inspection rights to that time. The trial court considered this argument and rejected it, and so do we. It was reasonable, in the context of this contract for the special manufacture of goods with which neither party had had prior experience, to limit this clause to adjustments to take place after tender and acceptance. After accept-

---

[10] General Statutes § 42a-2-606 (1) (c) provides a third ground, the exercise of dominion, for finding acceptance but that ground was not considered by the trial court, presumably because it has no apparent factual relevance to the circumstances of this case.

The full text of § 42a-2-606 (1) (a) is to be found at footnote 4, supra. The full text of § 42a-2-606 (1) (b) is to be found at footnote 5, supra.

ance, a buyer may still, in appropriate cases, revoke its acceptance; General Statutes § 42a-2-608; or recover damages for breach of warranty. General Statutes § 42a-2-714. The trial court reasonably concluded that a post-installation test was intended to safeguard these rights of the defendant as well as to afford the plaintiff a final opportunity to make needed adjustments. The court was therefore justified in concluding that there had been an acceptance within § 42a-2-606 (1) (a). A buyer may be found to have accepted goods despite their known nonconformity; *McCormick* v. *Ornstein,* 119 Ariz. 352, 355, 580 P.2d 1206 (Ct. of App. 1978); *Fred J. Miller, Inc.* v. *Raymond Metal Products Company,* 265 Md. 523, 527–28, 290 A.2d 527 (1972); and despite the absence of actual delivery to the buyer. *Montana Seeds, Inc.* v. *Holliday,* 178 Mont. 119, 124, 582 P.2d 1223 (1978); see generally White & Summers, supra, § 8-2; pp. 296–97.

The trial court's alternate ground for concluding that the tanks had been accepted was the defendant's failure to make an effective rejection. Pursuant to General Statutes § 42a-2-606 (1) (b),[11] an acceptance occurs when, after a reasonable opportunity to inspect, a buyer has failed to make "an effective rejection as provided by subsection (1) of section 42a-2-602." The latter subsection, in turn, makes a rejection "ineffective unless the buyer seasonably notifies the seller."[12] General Statutes § 42a-2-605 (1) (a) goes on to provide that a buyer is precluded from relying, as a basis for rejection,

[11] The full text of § 42a-2-606 (1) (b) is to be found at footnote 5, supra.

[12] General Statutes § 42a-2-602 (1) provides: "MANNER AND EFFECT OF RIGHTFUL REJECTION. (1) Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller."

upon unparticularized defects in his notice of rejection, if the defects were such that, with seasonable notice, the seller could have cured by making a substituted, conforming tender.[13] The defendant does not question the trial court's determination that its telegram of cancellation[14] failed to comply with the requirement of particularization contained in § 42a-2-605 (1). Instead, the defendant argues that the plaintiff was not entitled to an opportunity to cure, under General Statutes § 42a-2-508,[15] because the plaintiff had never made a tender of the tanks. That argument founders, however, on the trial court's finding that the seller was ready to make a tender on the day following the last inspection by the defendant's engineer and would have done so but for its receipt of the defendant's telegram of cancellation. The trial court furthermore found that the defendant's unparticularized telegram of cancellation wrongfully interfered with the plaintiff's contractual right to cure any remaining post-installation defects. In these circumstances, the telegram of cancellation constituted both a wrongful and an ineffective rejection on the part of the defendant. See *Uchitel* v. *F. R. Tripler & Co.*, 107 Misc. 2d 310, 434 N.Y.S.2d 77 (1980); White & Summers, supra, § 8-3, p. 315.

Once the conclusion is reached that the defendant accepted the tanks, its further rights of cancellation under the contract are limited by the governing

---

[13] General Statutes § 42a-2-605 (1) (a) provides: "WAIVER OF BUYER'S OBJECTIONS BY FAILURE TO PARTICULARIZE. (1) The buyer's failure to state in connection with rejection a particular defect which is ascertainable by reasonable inspection precludes him from relying on the unstated defect to justify rejection or to establish breach (a) where the seller could have cured it if stated seasonably."

[14] The full text of the telegram is to be found at footnote 3, supra.

[15] The full text of General Statutes § 42a-2-508 is to be found at footnote 9, supra.

provisions of the Uniform Commercial Code. "The buyer's acceptance of goods, despite their alleged nonconformity, is a watershed. After acceptance, the buyer must pay for the goods at the contract rate; General Statutes § 42a-2-607 (1); and bears the burden of establishing their nonconformity. General Statutes § 42a-2-607 (4)." *Stelco Industries, Inc.* v. *Cohen*, 182 Conn. 561, 563–64, 438 A.2d 759 (1980). After acceptance, the buyer may only avoid liability for the contract price by invoking the provision which permits revocation of acceptance. That provision, General Statutes § 42a-2-608 (1),[16] requires proof that the "nonconformity [of the goods] substantially impairs [their] value to him." See *Superior Wire & Paper Products, Ltd.* v. *Talcott Tool & Machine, Inc.*, 184 Conn. 10, 16, 441 A.2d 43 (1981); *Conte* v. *Dwan Lincoln-Mercury, Inc.*, 172 Conn. 112, 120–21, 374 A.2d 144 (1976). On this question, which is an issue of fact; *Superior Wire & Paper Products, Ltd.* v. *Talcott Tool & Machine, Inc.*, supra, 17; *Conte* v. *Dwan Lincoln-Mercury, Inc.*, supra, 121; the trial court again found against the defendant. Since the defendant has provided no basis for any argument that the trial court was clearly erroneous in finding that the defendant had not met its burden of proof to show that the goods were substantially nonconforming, we can find no error in the conclusion that the defendant's cancellation constituted an unauthorized and hence wrongful revocation of acceptance.

Finally, the defendant in its brief, although not in its statement of the issues presented, challenges the trial court's conclusion about the remedial con-

---

[16] The relevant portion of General Statutes § 42a-2-608 (1) is to be found at footnote 6, supra.

sequences of its earlier determinations. Although the trial court might have found the plaintiff entitled to recover the contract price because of the defendant's acceptance of the goods; General Statutes §§ 42a-2-703 (e)[17] and 42a-2-709 (1) (a);[18] the court chose instead to rely on General Statutes § 42a-2-709 (1) (b), which permits a price action for contract goods that cannot, after reasonable effort, be resold at a reasonable price.[19] Since the contract goods in this case were concededly specially manufactured for the defendant, the defendant cannot and does not contest the trial court's finding that any effort to resell them on the open market would have been unavailing. In the light of this finding, the defendant can only reiterate its argument, which we have already rejected, that the primary default was that of the plaintiff rather than that of the defendant. The

---

[17] The relevant portion of General Statutes § 42a-2-703 (e) is to be found at footnote 7, supra.

[18] The full text of General Statutes § 42a-2-709 (1) (a) is to be found at footnote 8, supra.

[19] The full text of General Statutes § 42a-2-709 (1) (b) is to be found at footnote 8, supra.

It should be noted that § 42a-2-709 (1) (b) is not premised on a buyer's acceptance. Instead, it requires a showing that the goods were, before the buyer's cancellation, "identified to the contract." In the circumstances of this case, that precondition was presumably met by their special manufacture and by the defendant's acquiescence in their imminent tender. See White & Summers, Uniform Commercial Code (2d Ed. 1980) § 7-5. The defendant has not, on this appeal, argued the absence of identification.

It should further be noted that § 42a-2-709 (1) (b), because it is not premised on acceptance, would have afforded the seller the right to recover the contract price even if the trial court had found the conduct of the buyer to be a wrongful rejection (because of the failure to give the seller an opportunity to cure) rather than a wrongful revocation of acceptance.

trial court's conclusion to the contrary supports both its award to the plaintiff and its denial of the defendant's counterclaim.

There is no error.

In this opinion the other judges concurred.