## Latham and Associates, Inc. *v.* William Raveis Real Estate, Inc.
## (14175)

Peters, C. J., Shea, Callahan, Glass and Borden, Js.

Argued February 21—decision released April 9, 1991

*James M. Nugent,* with whom, on the brief, was *George W. Derbyshire,* for the appellant (plaintiff).

*Irwin J. Gordon,* for the appellee (defendant).

PETERS, C. J. The issues in this appeal arise out of a dispute concerning the sale of two integrated computer systems that failed to meet their purchaser's needs for accurate documentation. The plaintiff, Latham & Associates, Inc. (vendor), filed a complaint to recover the unpaid purchase price for computer hardware and software delivered to the defendant, William Raveis Real Estate, Inc. (purchaser). The purchaser, claiming misrepresentation and breach of warranty, denied its own liability and sought, in a counterclaim, to recover damages as well as the return of moneys paid to the vendor. The trial court, after a hearing, found the issues for the purchaser, both on the complaint and on the counterclaim, but limited the purchaser's recovery to $81,500, representing a return of its payments for software. The vendor filed an appeal in the Appellate Court, which we transferred to this court pursuant to Practice Book § 4023. We affirm the judgment of the trial court.

The trial court found the following facts. The purchaser is a real estate company that sought computerized capacity to provide efficient interconnection between its own multiple offices and the various banks with which it dealt. The vendor, aware of the purchaser's needs and of the purchaser's reliance on the vendor's expertise to satisfy these needs, undertook to provide two computer systems that would meet these needs. To persuade the purchaser that it had the capacity to undertake these responsibilities, the vendor mis-

represented the extent of its expertise in creating functioning computer systems.

The parties entered into two contracts for the delivery of computer systems. The first contract, dated October 15, 1982, called for the vendor to deliver hardware and software for a so-called real estate system. The purchaser made all scheduled payments under this contract. The second contract, dated March 25, 1984, called for the vendor to develop and install a second computer system, the so-called mortgage system. Because of dissatisfaction with the performance of the software tendered under both contracts, the purchaser did not fully pay license fees or software support charges for the mortgage system.

The vendor's complaint sought to recover for the amounts unpaid on the mortgage system, while the purchaser's counterclaim sought to recover the payments it had made, and damages it had incurred, with respect to the software on both the real estate system and the mortgage system. The trial court found that, for both computer systems, despite its contractual representations to the contrary, the vendor was never able to provide software that reliably delivered the information sought by the purchaser. The trial court also found, however, that the purchaser had not presented a sufficient factual basis for its alleged right to recover certain elements of damages for the vendor's nonperformance. The trial court therefore rendered judgment against the vendor on its complaint and in favor of the purchaser on its counterclaim for return of the software contract price, in the amount of $61,750 for the real estate system and $19,750 for the mortgage system, for a total recovery of $81,500.

The vendor's appeal from this judgment focuses on the merits of the judgment on the purchaser's counterclaim. The vendor does not contest the trial court's find-

ing of fact that the two computer systems that it furnished the purchaser did not fulfill the parties' expectations for reliable data retrieval. The vendor does not challenge the trial court's conclusion of law that article 2 of the Uniform Commercial Code; General Statutes §§ 42a-2-101 through 42a-2-725; governs the transactions between the parties, even though the mortgage system contemplated a licensing arrangement rather than an outright sale.

The vendor has, however, raised thirteen other issues concerning various procedural and evidentiary rulings of the trial court. Most of these claims rest on factual assumptions that the trial court rejected. All of them suffer from the difficulty that appellate pursuit of so large a number of issues forecloses the opportunity for fully reasoned discussion of pivotal substantive concerns. A shotgun approach does a disservice both to this court and to the party on whose behalf it is presented. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. Practice Book § 4065; *Gaynor* v. *Union Trust Co.*, 216 Conn. 458, 482, 582 A.2d 190 (1990); *Liscio* v. *Liscio,* 204 Conn. 502, 507, 528 A.2d 1143 (1987); see *Isaac* v. *Mount Sinai Hospital,* 210 Conn. 721, 732, 557 A.2d 116 (1989).

I

The most important issue before us, which impinges on both parts of the purchaser's counterclaim, is whether a purchaser may recover the moneys paid for a dysfunctional computer system, on a theory of breach of express warranty, without expert testimony to identify the cause for the computer system's generation of inaccurate data. The vendor maintains that the purchaser must present expert testimony in order to rule out the possibility of user error. We disagree.

The need for expert testimony to establish a breach of warranty for computer systems is a question of first impression in this state and elsewhere. As a rule, expert testimony is required "when the question involved goes beyond the field of the ordinary knowledge and experience of judges or jurors." *Bader* v. *United Orthodox Synagogue,* 148 Conn. 449, 454, 172 A.2d 192 (1961); *Aspiazu* v. *Orgera,* 205 Conn. 623, 630–31, 535 A.2d 338 (1987); *Toomey* v. *Danaher,* 161 Conn. 204, 210, 286 A.2d 293 (1971); *Jaffe* v. *Department of Health,* 135 Conn. 339, 350, 64 A.2d 330 (1949); C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 7.16.5. We have not had the occasion to apply this principle in the context of computer dysfunction. In other jurisdictions, because expert testimony about the causes of a computer system's dysfunction was produced, the courts were not confronted with the sufficiency of the evidence claim that the vendor makes in this case. See, e.g., *Burroughs Corporation* v. *Chesapeake Petroleum & Supply Co.,* 282 Md. 406, 408, 384 A.2d 734 (1978); *In re Cadillac V8-6-4 Class Action,* 93 N.J. 412, 427, 461 A.2d 736 (1983); *Segall* v. *Ben's Truck Parts, Inc.,* 5 Wash. App. 482, 483, 488 P.2d 790 (1971). Even in *Cricket Alley Corporation* v. *Data Terminal Systems, Inc.,* 240 Kan. 551, 665, 732 P.2d 719 (1987), on which the purchaser relies for its expansive language, an expert found fault with the equipment delivered by the provider of the computer system.

On the present record, we are not persuaded that we should adopt a hard-and-fast requirement for expert evidence in every case of dissatisfaction with the output produced by computer systems. Three significant facts support the trial court's conclusion that expert testimony was not required in this case. First, the purchaser's burden of proof in this case was attenuated by virtue of the trial court's finding that the purchaser's right to return of the software purchase price was

grounded in the purchaser's exercise of its right of rejection under article 2 of the Uniform Commercial Code. Unlike the situation of a buyer who has accepted goods despite their nonconformity, who must assume the burden "to establish any breach"; General Statutes § 42a-2-607;[1] a rejecting buyer need only demonstrate that "the tender of delivery fail[s] in any respect to conform to the contract . . . ." General Statutes § 42a-2-601.[2] The trial court found that the vendor had not sustained its burden of proving that malfunctioning of the computer systems was caused by personnel failures attributable to the purchaser. Second, despite the trial court's ruling that expert testimony was unnecessary, the record discloses that the purchaser introduced some expert testimony about deficiencies in certain aspects of the vendor's software programs. Third, at least with respect to the real estate computer system, the purchaser relied on representations by the vendor that included the promise of support services

---

[1] General Statutes § 42a-2-607 provides in relevant part: "EFFECT OF ACCEPTANCE; NOTICE OF BREACH; BURDEN OF ESTABLISHING BREACH AFTER ACCEPTANCE; NOTICE OF CLAIM OR LITIGATION TO PERSON ANSWERABLE OVER. (1) The buyer must pay at the contract rate for any goods accepted. . . . (4) The burden is on the buyer to establish any breach with respect to the goods accepted."

"Under article 2, the rights and liabilities of the parties are determined, at least in part, by the extent to which the contract has been executed. The buyer's acceptance of goods, despite their alleged nonconformity, is a watershed." *Stelco Industries, Inc.* v. *Cohen,* 182 Conn. 561, 563, 438 A.2d 959 (1980). After acceptance, the buyer's further remedies by way of damages or recovery of the purchase price depend upon the buyer's proof that the goods are nonconforming. General Statutes §§ 42a-2-607 (3), 42a-2-608, and 42a-2-714; *Superior Wire & Paper Products, Ltd.* v. *Talcott Tool & Machinery, Inc.,* 184 Conn. 10, 13–15, 441 A.2d 43 (1981).

[2] "[General Statutes] Sec. 42a-2-601. BUYER'S RIGHTS ON IMPROPER DELIVERY. Subject to the provisions of section 42a-2-612 on breach in instalment contracts and unless otherwise agreed under sections 42a-2-718 and 42a-2-719 on contractual limitations of remedy, if the goods or the tender of delivery fail in any respect to conform to the contract, the buyer may (a) reject the whole; or (b) accept the whole; or (c) accept any commercial unit or units and reject the rest."

that inferentially encompassed some vendor responsibility for the work product of the purchaser's employees. In these circumstances, given the trial court's unchallenged finding that the computer software did not perform in accordance with the expectations of the parties, the court could reasonably conclude that the purchaser had produced sufficient evidence to sustain its recovery of the purchase price without expert testimony detailing the cause of the software failure.

## II

The vendor has raised several other issues concerning the purchaser's recovery of the software purchase price on its counterclaim with respect to the real estate computer system. The vendor's appeal renews three defenses to this counterclaim, which the trial court rejected, alleging: (1) the running of the statute of limitations, General Statutes § 42a-2-725;[3] (2) an accord and satisfaction arising out of the subsequent negotiation of the mortgage system contract; and (3) a waiver arising out of a written acceptance form signed by an employee of the purchaser. In light of the trial court's factual findings, the vendor's further pursuit of these claims does not warrant extensive discussion.

To sustain its affirmative defense that the purchaser's counterclaim was time barred, the vendor had to establish the purchaser's noncompliance with the

---

[3] General Statutes § 42a-2-725 provides in relevant part: "STATUTE OF LIMITATIONS IN CONTRACTS FOR SALE. (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

"(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."

requirements of § 42a-2-725.[4] For this purpose, the vendor had the burden of proving the date on which "tender of delivery [was] made," because delivery is what starts the running of article 2's statute of limitations. The record shows that the vendor did not satisfy this burden. It asserted that the statute began to run on October 15, 1982, but that was the date when the real estate system contract was negotiated. Delivery of the hardware required for the real estate system was not completed until 1983, and delivery of the software was arguably never completed. On this factual record, the vendor has not established its affirmative defense under § 42a-2-725.

The vendor's affirmative defense of accord and satisfaction arises out of its claim that the mortgage system contract was intended to encompass and replace its obligations under the real estate system contract. The trial court made a factual finding to the contrary. Although the mortgage system contract contained a merger clause indicating that the written document was intended as a definitive integration of the agreement of the parties concerning the mortgage system; see General Statutes § 42a-2-202;[5] the trial court was entitled to find that the parties did not intend the execution of the mortgage system contract to discharge

[4] Although the vendor takes issue with the trial court's finding that it had undertaken a continuing warranty obligation to the purchaser, we need not pursue that question.

[5] "[General Statutes] Sec. 42a-2-202. FINAL WRITTEN EXPRESSION: PAROL OR EXTRINSIC EVIDENCE. Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented (a) by course of dealing or usage of trade as provided by section 42a-1-205 or by course of performance as provided by section 42a-2-208; and (b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement."

the obligations previously assumed by the vendor in the real estate system contract. See *TIE Communications, Inc.* v. *Kopp,* 218 Conn. 281, 589 A.2d 329 (1991); *Halloran* v. *Fischer,* 126 Conn. 44, 46, 9 A.2d 290 (1939); 2 Restatement (Second), Contracts (1981) § 279.[6]

The trial court equally rejected, on factual grounds, the vendor's assertion that an acceptance form signed by an employee of the purchaser constituted a waiver of all outstanding contract claims relating to the real estate system contract. The court found that the employee had no authority to bind the purchaser in this regard, and that she had been misled in her signature by representations on behalf of the vendor that the document was a mere formality. Without a persuasive challenge to these underlying factual findings, this defense on the part of the vendor cannot be sustained.

### III

The vendor's appeal raises a number of different claims with respect to the trial court's judgment permitting the purchaser to recover its software purchase price payments for the mortgage system. Procedurally, the vendor alleges that the purchaser failed to plead or prove its compliance with the requirements of General Statutes § 42a-2-602[7] for an effective rejection. Substantively, the vendor maintains that the purchaser's breach of warranty claims cannot be recon-

---

[6] Section 279 of the Second Restatement of Contracts (1981) provides: "SUBSTITUTED CONTRACT

"(1) A substituted contract is a contract that is itself accepted by the obligee in satisfaction of the obligor's existing duty.

"(2) The substituted contract discharges the original duty and breach of the substituted contract by the obligor does not give the obligee a right to enforce the original duty."

Comment (a) to § 279 notes that the existence of a substituted contract depends upon the intention of the parties.

[7] General Statutes § 42a-2-602 provides in relevant part: "MANNER AND EFFECT OF RIGHTFUL REJECTION. (1) Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller."

ciled with various clauses in the mortgage system contract that purport to disclaim the vendor's liability and to impose time limitations on the purchaser's recovery. These claims, too, run afoul of the trial court's dispositive factual findings.

The vendor's procedural argument focuses on the notification requirements that, under article 2, circumscribe a disappointed purchaser's rights to reject goods that are nonconforming. The vendor's contention that the purchaser was required to *plead* its compliance with the requirements of § 42a-2-602 cannot survive the trial court's finding that the vendor permitted evidence on the issue of notification of rejection to be introduced, without objection, during the trial. See *Thompson & Peck, Inc.* v. *Harbor Marine Contracting Corporation,* 203 Conn. 123, 132, 523 A.2d 1266 (1987); *Damora* v. *Christ-Janer,* 184 Conn. 109, 112, 441 A.2d 61 (1981). The vendor's alternate contention that the purchaser failed to *prove* its compliance cannot stand in light of the trial court's finding that, during the pendency of the vendor's efforts to cure the defects in the software, the purchaser reasonably delayed exercising its right to reject the vendor's tender. Cf. General Statutes § 42a-2-508.[8] Until the possibility of cure had been exhausted, the purchaser did not have the opportunity to make the final inspection that is the prerequisite to an implied rejection under General Statutes § 42a-2-606 (1) (b).[9]

[8] "[General Statutes] Sec. 42a-2-508. CURE BY SELLER OF IMPROPER TENDER OR DELIVERY; REPLACEMENT. (1) Where any tender or delivery by the seller is rejected because nonconforming and the time for performance has not yet expired, the seller may seasonably notify the buyer of his intention to cure and may then within the contract time make a conforming delivery.

"(2) Where the buyer rejects a nonconforming tender which the seller had reasonable grounds to believe would be acceptable with or without money allowance the seller may if he seasonably notifies the buyer have a further reasonable time to substitute a conforming tender."

[9] General Statutes § 42a-2-606 provides in relevant part: "WHAT CONSTITUTES ACCEPTANCE OF GOODS. (1) Acceptance of goods occurs when the

See *Plateq Corporation* v. *Machlett Laboratories, Inc.,* 189 Conn. 433, 441–42, 456 A.2d 786 (1983). Finally, despite the execution of an acceptance form by an employee who had no authority to bind the purchaser in this respect, the trial court could and did find that the purchaser never in fact accepted the software in the manner contemplated by the applicable provisions of article 2. These findings impliedly encompass the further factual inference that the purchaser's ultimate rejection and the accompanying notification of the vendor were, in the particular circumstances of this case, as "seasonable" as § 42a-2-602 requires. See *Contoura Business Products, Inc.* v. *TLD, Inc.,* 1 Conn. App. 690, 691–92, 474 A.2d 1265 (1984).

The vendor's substantive argument invokes the terms of the mortgage system contract as grounds for the unenforceability of the warranty claims on which the purchaser relies. This argument, too, founders on the factual findings of the trial court. The trial court found that the vendor, by its representation that it would develop a software system that would suitably meet the purchaser's demonstrated needs, had given an express warranty as that term is defined in General Statutes § 42a-2-313.[10] See *Acme Pump Co.* v. *National Cash*

---

buyer (a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or (b) fails to make an effective rejection as provided by subsection (1) of section 42a-2-602, but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or (c) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him."

[10] "[General Statutes] Sec. 42a-2-313. EXPRESS WARRANTIES BY AFFIRMATION, PROMISE, DESCRIPTION, SAMPLE. (1) Express warranties by the seller are created as follows: (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise. (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty

*Register Co.,* 32 Conn. Sup. 69, 71–72, 337 A.2d 672 (1974). Such an express warranty may be actionable despite provisions in contractual disclaimers and limitation of liability clauses; General Statutes §§ 42a-2-316 (1)[11] and 42a-2-719 (2);[12] if, as the trial court found, the restrictive clauses are factually determined to have been unreasonable or to have failed of their "essential purpose." See *Conte* v. *Dwan Lincoln-Mercury, Inc.,* 172 Conn. 112, 123, 374 A.2d 144 (1976). The court's further finding of the vendor's misrepresentation about the extent of its expertise in the development of comparable computer systems negates the vendor's assertion that the mortgage system contract, as a complete and exclusive integration of the agreement, excluded parol evidence about express warranties. A misrepresentation undermines the intentional adoption of an integrated writing that is an essential prerequisite to invocation of the parol evidence rule. General Statutes § 42a-2-202; see *TIE Communications, Inc.* v. *Kopp,* supra; *Jay Realty, Inc.* v. *Ahearn Development Corporation,* 189 Conn. 52, 56, 453 A.2d 771 (1983).

---

that the goods shall conform to the description. (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

"(2) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warranty' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

[11] General Statutes § 42a-2-316 provides in relevant part: "EXCLUSION OR MODIFICATION OF WARRANTIES. (1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this article on parol or extrinsic evidence negation or limitation is inoperative to the extent that such construction is unreasonable."

[12] General Statutes § 42a-2-719 provides in relevant part: "CONTRACTUAL MODIFICATION OR LIMITATION OF REMEDY. . . .

"(2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title."

## IV

We have carefully examined the remaining issues raised by the vendor's appeal. These principally concern the provision of a transcript to the trial court and the manner in which the trial court calculated damages. Our examination of these contentions persuades us that they furnish no basis for reversal of the judgment of the trial court.

The judgment is affirmed.

In this opinion the other justices concurred.