ANGELIKA PAPAGORGIOU *v.* ANGELO ANASTOPOULOUS ET AL.
(10380)

NORCOTT, LAVERY and LANDAU, Js.

Argued June 1—decision released September 15, 1992

*Frank B. Velardi, Jr.,* for the appellants-appellees (defendants).

*Angelika Konstandinidis,* pro se, the appellee-appellant (plaintiff).

LANDAU, J. This is the second appeal to this court relating to the resolution of the question of whether the plaintiff or the defendants held title to the property located at 8 Orange Street in New Haven, prior to the taking of the property by the city of New Haven by eminent domain in 1989. See *Papagorgiou* v. *Anastopoulous,* 23 Conn. App. 522, 582 A.2d 1181 (1990). There are two other actions involving this property presently pending in the courts. The first, which was argued with this appeal; *New Haven* v. *Konstandinidis,* 29 Conn. App. 139, 612 A.2d 822 (1992); is an appeal to this court from the granting of a summary process judgment of possession in favor of the city of New Haven against Angelika Papagorgiou, the plaintiff in this action. The other action, which has been stayed in the trial court pending disposition of this appeal, involves a challenge by the defendants in this action to the statement of compensation filed by the city of New Haven on August 11, 1989, in the condemnation proceeding. The plaintiff here, Angelika Papagorgiou, was permitted to intervene in the condemnation action because of her claim that she possessed equitable title to the property on the date of the condemnation.

In this case, the defendants appealed and the plaintiff cross appealed from the judgment of the trial court rendered after a remand ordered by this court. See *Papagorgiou* v. *Anastopoulous, supra.* On remand, the trial court determined that the defendants had breached the parties' lease agreement in which the defendants leased the premises to the plaintiff with an option to purchase, as of May 21, 1987, the date on which the defendants received notice that the plaintiff was exercising the option clause in the lease. The court further determined that the taking of the property by the city of New Haven by eminent domain prevented the court from awarding the plaintiff relief on her claim for specific performance. Because the court concluded that it could not grant specific performance, it refused to "replace the defendants with the plaintiff in the condemnation proceeding." The court then determined that "the appropriate remedy is monetary damages" and awarded the plaintiff money damages in the amount of $57,800 for breach of the lease agreement between the parties.[1]

On appeal, the defendants dispute the trial court's determination that the plaintiff validly exercised the option clause contained in the lease agreement between the parties and also challenge the court's calculation of damages.[2]

---

[1] The trial court calculated the amount of damages to be $40,000, "the difference between the fair market value of the property at the time of the breach and the price set in the fixed price option"; $12,275 for "rent paid to defendants after the breach . . ."; $4400 for "expenses properly incurred in preparing to take title, including the appraisal fee and points paid to the [Bank]"; and, finally, $1125 for an arbitrator's fee.

[2] The issues raised in the defendants' brief are: "1. Whether the trial court erred in finding that the plaintiff was entitled to exercise an option to purchase contained in a Lease Agreement subsequent to receipt of notices that the defendants had received an offer to purchase from a third party?

"2. Whether the trial court erred in its award of damages to the plaintiff in the amount of $57,800.00?"

On the cross appeal, the plaintiff claims that "[a] decree giving her the right of ownership at the time of the taking, less the option price, would have placed her in the same position she would have been in had the defendants honored the contract." She therefore seeks a judgment from this court declaring her the rightful owner of the property as of the date of the taking by the city of New Haven because she effectively exercised her option to buy on May 21, 1987. If the plaintiff prevailed on her cross appeal, she would be entitled to receive whatever amount of compensation is determined to be due in the condemnation action, less the amount of the option price of $90,000, which, she agrees, would be due the defendants. While the plaintiff acknowledges that the declaration of equitable title which she seeks disentitles her to the $40,000 portion of the court's damage award, she argues that she is still entitled to receive the additional $17,800 for rent paid to the defendants and for the other expenses articulated by the trial court; see footnote 1, supra; because the court recognized that the plaintiff possessed equitable title as of the date of the exercise of the option, May 21, 1987.

We need not reach the merits of the parties' appellate arguments because, under Practice Book § 4055,[3] the defendants' failure to file a brief on the plaintiff's cross appeal has already resulted in the rendering of a judgment for the plaintiff on her cross appeal. The issues on the main appeal are rendered moot because the issues briefed by the defendants; see footnote 2, supra; have been resolved against them by their own inaction.

---

[3] Practice Book § 4055 provides in relevant part: "If a party shall fail to defend against [a cross] appeal with proper diligence, the [appellate] court may, on motion by any other party to the [cross] appeal or on its own motion, set aside in whole or in part the judgment under attack, with costs, and direct the entry of an appropriate final judgment by the trial court against the party guilty of the failure. . . ."

Mootness applies to situations where events have occurred during the pendency of an appeal that make an appellate court incapable of granting practical relief through a disposition on the merits. *State* v. *Tippetts-Abbett-McCarthy-Stratton,* 204 Conn. 177, 181, 527 A.2d 688 (1987). "The standards governing mootness are well established. Because this court has no jurisdiction to give advisory opinions, no appeal can be decided on its merits in the absence of an actual controversy for which judicial relief can be granted. *Sobocinski* v. *Freedom of Information Commission,* 213 Conn. 126, 134–35, 566 A.2d 703 (1989); *Shays* v. *Local Grievance Committee,* 197 Conn. 566, 571, 499 A.2d 1158 (1985); *Waterbury Hospital* v. *Connecticut Health Care Associates,* 186 Conn. 247, 249–50, 440 A.2d 310 (1982); *Connecticut Foundry Co.* v. *International Ladies Garment Workers Union,* 177 Conn. 17, 19, 411 A.2d 1 (1979); *Reynolds* v. *Vroom,* 130 Conn. 512, 515, 36 A.2d 22 (1944)." *Moshier* v. *Goodnow,* 217 Conn. 303, 306–307, 586 A.2d 557 (1991). As a result of the defendants' inaction and the subsequent judgment rendered in favor of the plaintiff, no controversy exists in this case.

Counsel for the defendants had been summoned to appear before this court on January 9, 1992, to explain why "the [cross] appeal should not be disposed of [pursuant to Practice Book § 4055] and why sanctions should not be imposed [pursuant to Practice Book § 4184][4] for failure to file the documents listed or to pursue the [cross] appeal with diligence." The order further specified that the brief of the defendant cross-appellee, which was due on December 4, 1991, was at issue in the hearing.

---

[4] Practice Book § 4184 provides in relevant part: "Actions which may result in the imposition of sanctions include, but are not limited to, the following: (1) Failure to comply with rules and orders of the court. . . ."

During the January 9 hearing, counsel for the defendants attributed his failure to file the brief solely to staffing problems in his office. At no time did he request permission not to file a brief on the cross appeal, nor did he argue that in his opinion a brief was unnecessary. He stated unequivocally that he would file a cross appellee's brief "in two weeks." This court accepted his assurance, and, over strong objection by the plaintiff's counsel,[5] allowed a two week extension to file the brief. The plaintiff argued that no extension of time should be permitted because the defendants had also previously failed to file timely its brief on the main appeal. This court issued its order on the same day as the hearing. The order clearly stated that "the brief of the defendant cross appellee must be filed on or before January 23, 1992, or the matter will be remanded to the trial court with direction to enter judgment on the cross appeal." Notice of this order was mailed to the defendants' counsel on January 9, 1992.

At no time prior to January 23, 1992, did counsel for the defendants request that this court reconsider or rescind the order of January 9, 1992. Instead, he simply chose not to file the brief, despite his representation to the contrary. As a result of the defendants' failure to file their brief, the matter was remanded to the trial court on January 30, 1992, with direction to render judgment for the plaintiff on the cross appeal. After judgment was rendered for the plaintiff, the defendants filed a motion to reconsider the entry of judgment on the basis of a claimed lack of notice. The defendants further represented in their motion to reconsider that the brief "will be ready for filing on February 5, 1992, or February 6, 1992, at the latest." Because the defendants' counsel had attended the hear-

[5] Counsel for the plaintiff has since withdrawn from this appeal by virtue of the plaintiff's filing a pro se appearance in lieu of counsel, as provided by Practice Book § 4035.

ing on this specific matter and had affirmatively represented to this court that he intended to file a brief "in two weeks," the defendants' claim of lack of notice was without merit and, as a result, the motion to reconsider was denied.

Once the trial court rendered judgment for the plaintiff on the cross appeal, she was entitled to the relief sought therein, a decree giving her the right of ownership at the time of the taking of the property by the city of New Haven, less the option price of $90,000, as well as damages in the amount of $17,800. In keeping with that judgment, the defendants are consequently entitled to the option price of $90,000, less the $17,800 due the plaintiff. At this time, it cannot be determined what amount, if any, the plaintiff will receive as equitable owner of the property. That question will be decided in the condemnation action, which has been stayed pending our decision in this matter.

The dissent argues that the issues on the main appeal do not become moot subsequent to the rendition of judgment for the plaintiff on the cross appeal. In reaching this conclusion, the dissent relies exclusively on the issues as framed by the plaintiff in her cross appeal, seemingly exalting form over substance. Unlike arbitration hearings, where the arbitrators are bound by the submissions, there is no such limitation on a direct appeal. Neither this court nor our Supreme Court is bound by the issues as framed by the parties in their statement of the issues. Rather, our analysis is addressed to the contents of the brief. This conclusion is further supported by our appellate courts' routine refusal to consider issues not properly briefed, although properly listed in the statement of issues, concluding that such issues have been abandoned. Moreover, a review of the case history in this state reveals that, in determining what issues are to be addressed on appeal, it has been the practice to examine the contents of the

brief rather than rely on the statement of the issues. See, e.g., *Plateq Corporation* v. *Machlett Laboratories, Inc.,* 189 Conn. 433, 444–45, 456 A.2d 786 (1983) (court considered issues of remedial consequences to its earlier determinations although this issue was not in the defendant's statement of the issues).

The defendants' appeal is dismissed as moot.

In this opinion NORCOTT, J., concurred.

LAVERY, J., dissenting. I respectfully disagree with the majority's conclusion that because judgment was rendered for the plaintiff on the cross appeal pursuant to Practice Book § 4055, the issues on the main appeal become moot.

The issues on the cross appeal set forth in the plaintiff appellee's brief are: "(1) Did the court err in ruling that the plaintiff's appropriate remedy for the breach of contract was damages? (2) Did the court err in arriving at a figure of $40,000 as the difference between the option price and the fair market value of the premises in determining damages, where there was no evidence before the court as to the fair market value of the premises at the time of the breach of contract?"

The issues in the cross appeal are thus limited to the remedy or damages that flow from a breach of contract. There must first be a finding of breach of contract before a court can reach the remedy or damages. A basic principle of law is that whenever one person has committed a wrong against another, the person wronged shall be awarded compensatory damages to the extent that he will be as well off as though the wrong had not been committed. *Kenny* v. *Civil Service Commission,* 197 Conn. 270, 276, 496 A.2d 956 (1985). This principle applies where there has been a breach of contract. *Leventhal* v. *Stratford,* 121 Conn. 290, 299, 184 A. 587 (1936).

The defendant appellant's brief set forth the following issues: "1. Whether the trial court erred in finding that the plaintiff was entitled to exercise an option to purchase contained in a Lease Agreement subsequent to receipt of notices that the defendants had received an offer to purchase from a third party? 2. Whether the trial court erred in its award of damages to the plaintiff in the amount of $57,800.00?"

I believe this court must first find a breach of contract before we can award the remedy of damages on the cross appeal. Only after a breach is found may we then dispose of the matter of damages under Practice Book § 4055 as a sanction against the defendant-appellant for failing to file a brief on the cross appeal.

I take issue with the trial court's finding of a breach of contract. The contract in this case was a lease with two option provisions. The first was an option to purchase at a fixed price, the second a right of first refusal to a bona fide offer. The issue presented is whether the lessee, who has not exercised the fixed price option, may purchase the property for the fixed price after he has been notified of a third party offer for an amount greater than the fixed price or whether the lessee must purchase, if he is to purchase at all, by exercising his right of first refusal by matching the offer of the third party?

The trial court found, on the basis of *McDonald's Corporation* v. *Lebow Realty Trust*, 888 F.2d 912 (1st Cir. 1989), that the lessee may elect to purchase at the lower fixed option price. I believe, however, that under *Texaco, Inc.* v. *Rogow*, 150 Conn. 401, 409, 190 A.2d 48 (1963), Connecticut law dictates that when the holder of dual options receives notice from the lessor of an offer to purchase, the fixed price option is extinguished.[1]

---

[1] Also, where ambiguity in the language of the agreement exists, option contracts are generally strictly construed against the optionee. *Smith* v.

I would reverse on the claim of breach of contract and remand the matter to the trial court to make a finding on whether the offer to purchase by the third party was a bona fide offer. If it was a bona fide offer, I would render judgment on the appeal for the defendant-appellant. If it was not a bona fide offer, I would uphold the trial court's result on the breach of contract claim and render judgment for the plaintiff-appellee on the cross appeal.

*Hervo Realty Corporation,* 199 Conn. 330, 336, 507 A.2d 980 (1986); *Pigeon* v. *Hatheway,* 156 Conn. 175, 183, 239 A.2d 523 (1968).

This rule of contract interpretation likewise leads to the conclusion that the notification of a bona fide offer to purchase by a third party for a greater amount extinguishes the optionee's fixed price option to purchase because the agreement fails specifically to set forth the relationship between the fixed price option to purchase clause and the right of first refusal clause.